## PUTNAM and another *v.* VON HOFE.

*(Circuit Court, S. D. New York.* February 10, 1881.)

1. COMBINATION—TRANSPOSITION OF PARTS—INFRINGEMENT—IMPROVEMENT IN BOTTLE-STOPPERS.

Re-issued letters patent granted to Karl Hutter, June 5, 1877, for an improvement in bottle-stoppers, claimed, *inter alia:* "(9) The combination of the pivoted bottle-stopper, C, neck-ring, A, and eccentric lever, B, the said yoke and eccentric lever being pivoted together and arranged so that the stopper is forced into the bottle by swinging the handle part of the lever against the side of the bottle, substantially as herein shown and described." *Held,* that such claim was infringed by a bottle-stopper, containing all the elements described, having the lever pivoted to the middle part of the yoke, instead of to the lower ends of the yoke, as in the patented structure.

2. SAME—FORMAL MODES OF CONSTRUCTION—SCOPE OF RE-ISSUE.

*Held, further,* in view of the prior state of the art, that the re-issue was not limited to the formal modes of construction therein described.

3. SAME—FOUNDATION INVENTION.

*Held, further,* that the patentee was the first person who had combined, by three pivotal connections, the four elements of the first claim of the re-issue in a combination having the mode of operation therein set forth.—[ED.

*Arthur v. Briesen,* for plaintiffs.

*John Van Santvoord,* for defendant.

BLATCHFORD, C. J. This suit is brought on re-issued letters patent granted to Karl Hutter, June 5, 1877, for an improvement in bottle-stoppers, the original patent having been granted to Charles De Quillfeldt, as inventor, January 5, 1875. This is the same re-issue adjudicated upon in the

suit, decided herewith, of the same plaintiffs against Fritz Hollender and William Hollender.*

1. The infringing stopper in this suit, known as Exhibit No. 1, is called the Von Hofe stopper, and is the same as Exhibit No. 11 in the Hollender suit. It is shown in this suit to be made in accordance with the description in letters patent granted to the defendant August 24, 1875, No. 167,141, for "an improvement in bottle-stoppers," the application for which was filed July 30, 1875. The application for the original De Quillfeldt patent was filed November 30, 1874. It is alleged in this case that the defendant's stopper infringes the first and ninth claims of the plaintiffs' re-issue. In the Hollender suit it was not alleged that the Von Hofe stopper infringed the ninth claim. It was alleged that it infringed the first and second claims. In this suit it is not alleged that it infringes the second claim. The question as to its infringemant of the first claim was very fully considered in the decision in the Hollender suit, and the stopper was held to be an infringement of that claim. The defendant's stopper contains all the elements found in the ninth claim of the plaintiffs' re-issue, combined in substantially the same way and having substantially the same mode of operation. The ninth claim is for "*the combination of the pivoted bottle-stopper with the yoke, C, neck-ring, a, and eccentric lever, B, the said yoke and eccentric lever being pivoted together and arranged so that the stopper is forced into the bottle by swinging the handle part of the lever against the side of the bottle, substantially as herein shown and described.*"

The defendant's stopper has the combination of a pivoted bottle-stopper, composed of a rigid part and an elastic part, a yoke, a neck-ring, and an eccentric lever; the yoke and the eccentric lever being pivoted together and arranged so that the stopper is forced into the bottle by swinging the handle part of the lever against the side of the bottle. The lever in the two stoppers is eccentric, in the sense of that word as used in the plaintiffs' specification. That specification says that the pivoted connections of the yoke to the lever are so

*Ante, 882.

placed that when the lever has been turned against the bottle, to the position to hold the compound stopper so that it closes the bottle mouth, those pivotal connections are at that time turned past the vertical plane which passes through the pivotal connections of the lever with the neck-band, and the pivotal connection of the yoke with the compound stopper, so as to lock the compound stopper in its closed position. The specification of the defendant's patent describes a like eccentric action in saying that, when the lever is so far depressed as to come against the bottle, the yoke swings beyond the fulcrum pin in the lugs on which the lever turns, and the lever is securely retained in its locking position. The only difference between the two structures in this respect is that in the De Quillfeldt stopper the lever pushes the lower ends of the yoke beyond the center, and in the Von Hofe stopper the lever pulls the middle part of the yoke beyond the center. But this difference is only formal, and results from the fact that in the former the lever is pivoted to the lower ends of the yoke, and in the latter it is pivoted to the middle part of the yoke. There is, therefore, an infringement of the ninth claim.

2. The defendant has introduced several prior patents on the question of novelty, as well as to affect the construction of the claims of the plaintiffs' re-issue. There are the following United States patents: Jeannotat, July 17, 1855; Cronk, March 19, 1861; Wiegand, September 29, 1863; Schlich, September 5, 1865; Robinson and Jenkins, December 11, 1866; and Weber, July 2, 1867. There are the following English patents: Chalus, full specification filed March 7, 1857; Thompson, full specification filed September 28, 1867; Michaelis, full specification filed March 11, 1873; and Thompson, full specification filed August 14, 1874. In view of such bottle-stoppers as are described in the foregoing patents, the defendant, by expert testimony, seeks to divide bottle-stoppers which have yokes and levers into classes,—one class having the lever between the bottle neck and the yoke, and thus drawing the yoke down, to which class the De Quillfeldt is assigned; another class having the lever between the stopper and the

yoke, and thus drawing the yoke up, to which class the Von Hofe stopper is assigned. These prior patents are adduced as showing a lever between a yoke and a stopper, and a lever between the bottle neck and a yoke, and as showing in each form the eccentric action before referred to, and as showing a combination of stopper, lever, yoke, and neck wire still connected together and to the bottle after the bottle is unstoppered, and capable always of moving relatively to each other without disconnection, and as showing a compound stopper composed of a rigid disk and an elastic disk. On what is found in these prior patents the defendant contends that the plaintiffs' are limited to a lever frame, the fulcrum of which is pivoted to the neck wire of the bottle, a yoke which is pivoted to the lever frame at points between such fulcrum and the handle of the lever, and a compound stopper which is pivoted to the yoke. The defendant also contends that there are three pivotal connections in Jeannotat,—the yoke to the neck of the bottle, the lever to the yoke, and the lever to the stopper; and that there are three pivotal connections between certain parts in Chalus, Michaelis, Cronk, and Robinson and Jenkins. In regard to Wiegand, Schlich, Weber, Thompson of 1867, Michaelis and Thompson of 1874, the defendant's expert testifies that he does not consider any one of them an anticipation of the invention described in the De Quillfeldt patent, and more particularly of that claimed in the first claim of the re-issue. He does not express a contrary opinion in regard to Jeannotat, Cronk, Robinson and Jenkins, or Chalus. In regard to Jeannotat, Cronk, Robinson and Jenkins, and Chalus, the plaintiffs' expert testifies that he does not find in any of them any of the devices secured by the plaintiffs' reissue. In regard to Jeannotat the plaintiffs' expert testifies that there are in it but two pivotal connections,—the yoke to the neck band and the lever to the cap-piece of the yoke,—and no pivot between the stopper and the device for applying pressure, and no eccentric action, and no such compound stopper as De Quillfeldt has, and no action of the lever to draw the stopper out of the bottle. The defendant's expert states that in Jeannotat a part of the yoke is connected with

the stopper by pins which act as pivots; but the plaintiffs' expert does not concur in this view, and he is clearly right, because while the stopper is being forced to its place in Jeannotat there is no pivotal action between the stopper and the yoke, as there is in the De Quillfeldt stopper, but only a sliding motion. Nor is there in Jeannotat any pivotal connection between the lever and the stopper, as there is in the defendant's stopper. In regard to Cronk, the plaintiffs' expert testifies that it has no lever; that it has not such three pivotal connections as are referred to in the De Quillfeldt patent; that there is nothing in it to produce a locking action; and that the stopper is not pivoted to the yoke. In regard to Robinson and Jenkins, he testifies that the stopper is not pivoted to the yoke. In regard to Chalus, he testifies that there are but two pivots. The Jeannotat, Cronk, Robinson and Jenkins, and Chalus patents were under consideration, on final hearing, by Judge McKennan, in a suit before him on the plaintiffs' re-issue, against Hammer and Sunderman, and were held to be no answer to the suit. The stopper which was held in that case to be an infringment of the first claim of the plaintiffs' re-issue, appears to be like the defendant's stopper in the particulars before set forth, in which that stopper is held to infringe the said first claim.

The defendant's expert is of opinion that the defendant's stopper does not contain the De Quillfeldt invention because it has projections, and the ends of the lever are not pivoted to the bottle neck, and the yoke is pivoted to the neck wire, and the yoke is not pivoted to the stopper, and the lever is not pivoted to the lower ends of the yoke. These views would have force if the plaintiffs' re-issue were required by the prior state of the art to be limited to the formal modes of construction described. But De Quillfeldt is shown to have been the first person to combine, by three pivotal connections, the four elements of the first claim of the plaintiffs' re-issue in a combination having the mode of operation set forth in said claim. The success of his stopper was due to such combination. All prior stoppers failed of the result for want of such combination. The defendant did not make his stopper

in the infringing form until after he had seen the construction and operation of the De Quillfeldt stopper. That disclosed the necessity of three pivotal connections between the four elements of the stopper. This was the foundation idea, and makes De Quillfeldt's the foundation invention. However nearly prior inventions approached, they did not reach success.

3. The defendant put in evidence two other English patents,—one to Henry, final specification filed October 29, 1862, and one to Mennons, final specification filed October 1, 1868. No witness for the defendant gives any testimony as to anything in either of these two patents, and therefore they cannot receive much attention. It is apparent, from the testimony of the plaintiffs' expert, that they do not affect the plaintiffs' re-issue.

4. It is contended that the defendant anticipated De Quillfeldt by making, in 1869, a stopper like Exhibit P, which he then exhibited to many persons. Only one was then made. It disappeared, and nothing more was done about it till the latter part of 1874, when one was made, modified into a structure like P², and Fritz Hollender, the defendant in the Hollender suit, made some stoppers like P². In the form of P², Von Hofe applied for a patent for it, January 20, 1875, and a patent for it was issued to him, No. 163,553, May 18, 1875. The stopper did not operate well, and then the stopper, Exhibit No. 1, was got up by Von Hofe, after he had seen the De Quillfeldt stopper. The reason why the stopper P, in the form it had, and in all the modified forms of it made by Von Hofe, and in the form shown in patent No. 163,553, did not succeed as a stopper, was because of the dificulties in it which were remedied in Exhibit No. 1, and which remedies were first applied by De Quillfeldt in his stopper. All of the Von Hofe stoppers, until Exhibit No. 1, had a slot in the plate of the cam instead of a pivotal connection by a pin in a hole which is not a slot, so that there was a play to the lever besides the turning motion on an axis. In consequence of that, in closing the stopper in Exhibit P², it would sometimes fly out, as Fritz Hollender says. He says that in Ex-

hibit No 1 that is not the case. The same difficulty existed, for the same reason, in Exhibit P, and in all the forms of the Von Hofe stopper before Exhibit No. 1. The slot is called "an eccentric slot," in patent No. 163,553. Its existence made the action of the structure uncertain, and the structure must fall within the category of an incomplete experiment towards the invention of De Quillfeldt.

5. The only other defence insisted on in this case is the alleged prior invention of Otto. That has been considered fully in the decision in the Hollender case.

There must be a decree for the plaintiffs on the first and ninth claims of their re-issue, and for a reference in the usual form as to profits and damages, and a perpetual injunction, with costs.