CHARMBURY v. WALDEN.

(Circuit Court, D. New Jersey. October 2, 1905.)

1. PATENTS—ANTICIPATION—EVIDENCE.

Alleged anticipating patents introduced by a defendant in a suit for infringement are entitled to little consideration, unless there is expert or other evidence to show their relation to the patent in suit.

2. SAME—INFRINGEMENT—VAMP STAY FOR SHOES.

The Charmbury patent, No. 717,348, for a vamp stay for shoes, considered, and *held* not anticipated, valid, and infringed.

In Equity. Suit for infringement of letters patent No. 717,348, for a vamp stay for shoes, granted to John H. Charmbury December 30, 1902. On final hearing.

Russell M. Everett and Francis C. Lowthorp, for complainant.
William S. Beaman, for defendant.

CROSS, District Judge. The bill of complaint alleges infringement by the defendant of letters patent No. 717,348, dated December 30, 1902, issued to the complainant for a vamp stay for shoes. The inventor in the specifications describes this invention as follows:

"This invention relates to that class of stays for the vamps of shoes each stay of which is formed in a separate piece from the vamp, the said piece being folded on itself and the folded edge being arranged to project beyond the edge of the vamp so that the vamp stay will take the strain at the center of its folded edge, and thus prevent the vamp from tearing. Heretofore in the ordinary practice of recent years the stays, folded as above stated, have had a hard round edge, due to the folding, extend from end to end of the stay, and the vamp was of double thickness from end to end; and thus where it ended under the vamp materially increased the thickness or bulk of leather over the instep of the foot. Obviously this did not conduce to the comfort of the wearer. Because of the thickness of the vamp stay beneath the vamp, the shape of the former soon impressed itself in clear outline defined upon the outside of the vamp, and thus detracted from the sightly appearance of the shoe. Furthermore, the prior construction referred to was objectionable in the manufacture of the shoe, because in sewing the usual line of stitching along the upper edge of the vamp, when the needle struck the hard, thick, and round (in cross-section) edge due to doubling, the needle glancing off said edge frequently threw the stay out of proper place beneath the vamp preliminary to sewing, and this also detracted from the appearance of the finished shoe. This same objectionable result was oftentimes effected by the pressure foot of the machine sticking, indirectly, the thick double edge beneath the vamp, and thus shifting it from its true and proper place. Again, in the construction heretofore common, the edges of the stay, back from the curved folded edge were 'full,' the fullness being due to the stretching of the leather at the folded edge more than the parts back from said edges, to secure a desired curvature of the folded edge in plan; and thus, when the stay thus constructed was sewed in the shoe, the stretched and curved edge projecting from the vamp and the line of stitching passing through the full parts near the center of the stay, the tension of the vamp, due to the pressure of the foot therein, came upon the thread, rather than upon the stretched part, having tensile resistance due to the prior stretching, thus breaking the thread. These objections are avoided or greatly reduced because of my improved construction hereinafter described. It will be understood from the foregoing that the objects of the invention are to reduce the bulk and discomfort incident to the use of independent vamp-stays, and yet retain the strength thereby secured in the shoe; to secure greater neatness of appearance when the upper and vamp are joined; to prevent

the needle from glancing off the vamp stay when sewing the same in place, and thereby tending to shift or displace the stay, and injure the appearance of the sewing; to reduce the tendency of the thread in the line of sewing at the vamp stay to break because of the fullness in the stays as heretofore commonly furnished; and to secure other advantages and results, some of which may be referred to hereinafter more fully."

The patent has two claims, viz:

"(1) The improved vamp stay herein described, comprising a body portion, a, and a tongue, b, lying at one side of said body portion, and narrower than said body portion, said narrow tongue being turned against the back of said body portion, a folded edge being formed near the forward central part of the stay, and the lateral edges of the tongue lying in from the lateral edges of the said body portion, the said folded edge being turned forward to form a rib or boss, h, substantially as set forth.".

"(2) The improved vamp stay herein described, comprising a body portion, a, having at the center of the forward edge a tongue narrower than said forward edge, and turned back against the body portion; the edges at the opposite sides of said tongue lying in from the side edges of the body portion, substantially as set forth."

The answer of the defendant admits the making of vamp stays, "which are not substantially different from the article set forth in the claims of said letters patent." The defense set up is want of novelty and invention, in the subject-matter of complainant's patent, and its consequent invalidity. As stated, the answer practically admits infringement, but whether so or not, the evidence clearly shows that the defendant, since the date of the complainant's patent, and prior to the commencement of this suit, has made and sold an article clearly within the protection of such patent, if the same is valid. The article patented is exceedingly simple in itself, and of simple construction, but conceding this, it nevertheless shows in our opinion, invention and novelty. The defendant has been interested in the manufacture of shoes and vamp stays for many years. The stays first used by him were made of a narrow strip of folded leather or other suitable material of the proper length.

Similar stays to these could be made from an article patented by one Stone, and called by him "an improved piping for boots and shoes." This piping was usually made in long strips of folded leather, which when used for stays, was cut in pieces of the desired length. Stays thus made in no wise, however, foreshadowed or suggested the complainant's construction, and clearly manifested the objectional features, which are set out in the specifications of the complainant's patent. The defendant used this kind of vamp stay for some time, but later, and for several years, made and used vamp stays, cut out by a die, known in the case as the "Osborn Die." These vamp stays were also unlike those manufactured under complainant's patent, and quite clearly resembled those made from the piping above referred to. The "Osborn Die," as the testimony shows, cut out a blank of thin leather which was folded longitudinally, then pasted together, and so held until stitched to the vamp. Mary C. Breen, a former employé of the defendant, says that they were curved on the folded edge; but to do this required considerable careful manipulation, and to some extent crimpled or puckered one of the flaps of the vamp stay.

It was clearly impossible to fold the blank made by this die so as to make a vamp stay with a curved edge, and stepped or graduated sides without crimping the leather or material in the middle. This construction did not suggest the tongue or narrowed portion of the stay, which is the important feature of the complainant's patent; and it was likewise open to some of the serious objections which the complainant's patent avoids.

The defendant entirely abandoned the use of this stay in 1897, and, thereupon, began to make what is known in the case as the "Walden Vamp Stay No. 1;" this was manufactured under design patent No. 27,961, dated December 7, 1897, issued to the defendant for a design for a vamp stay for shoes. This design shows no tongue or any equivalent, and as testified by the complainant's expert witness, the drawings accompanying the patent disclose a construction made of two pieces, one part being superimposed upon the other. Whether this be so or not, it appears from other evidence that the defendant always made this stay of one piece, by forcing the leather blank into a die, whereby the front and sides of the blank were turned under and inward towards the center. This vamp is of considerable thickness, and is stiff and hard, as the result of the doubling-in process of the front and sides. That these objections were real, is clearly shown by the evidence from which it appears that complaints of its thickness were more or less frequently made by customers, and that to obviate the defects complained of, the rear part of the vamp stay was skived or pared to make the stay thinner and more pliable. This process involved additional labor and expense, in an attempt to accomplish what the complainant's invention achieves, by means of its tongued or narrowed portion, which, when folded back upon itself, makes a stepped or graduated side to the stay. The complainant later manufactured a single-piece vamp stay with an unfolded edge. The stay with the unfolded or raw edge had manifest disadvantages, both in appearance and durability, and is not altogether unlike the complainant's stay, but was obviously unsuited for the purpose intended; its raw edge made it comparatively weak and unsightly, and it is manifest that it was adapted for use only in a cheap grade of shoes. Later the defendant began to make and sell stays like the complainant's. From what has already been said, it will be observed that the defendant, after using various constructions of a different character from the complainant's, was finally compelled, for no other reason apparently than to sustain himself in trade competition, to adopt the complainant's construction.

In addition to the Stone patent, above referred to, the defendant has cited several other patents as anticipations of the complainant's patent. These will be briefly considered.

First, then, we have a patent issued to Charles C. Geller, for improvements in shoes, No. 116,828, dated June 11, 1871. This patent it may be said at the outset, was not for a vamp stay, but for a vamp; the vamp having as a part of it, a tongue in the center "which, when the shoe is fitted, is turned under so as to form the same out-

line as the vamp commonly used." Of this construction, complainant's expert testifies as follows:

"I have also examined and understand 'defendant's Exhibit Geller Patent,' and fail to discover the subject of the Charmbury invention as claimed in this patent. The Geller patent in Fig. 1 shows the vamp having an integral vamp stay at the top. The vamp stay, however, has no tongue, and presents no indication whatever of a tongue and the advantages due thereto. Such a construction has material disadvantages in actual practice for obvious reasons; it projects from the upper edge of a vamp in such a manner as would naturally involve a wasteful expenditure of leather in cutting out the vamp. Should such a stay be folded beneath the vamp in cases where the vamp is perforated for ornamentation, the unblackened under side of the leather would show through the perforation, and detract from the appearance of the shoe. However, this patent does not disclose the invention at issue, and further consideration, I presume, is not called for."

For these reasons, and because the patent is for a vamp, and not for a vamp stay, we deem its further consideration unnecessary.

Another patent cited, was for an improvement in overalls, issued to Jacob Greenbaum August 25, 1874, and known as No. 154,473. This patent does not seem to require any serious consideration in this connection; it was simply for a stay or gusset to the pockets of overalls, and would seem to have been known and used for that purpose from time immemorial. A piece of cloth or flexible material of any size, shape, or thickness, either folded or unfolded, would answer all its requirements.

Two other patents cited were issued to the defendant, one for design patent No. 26,399, dated December 15, 1896, another dated May 4, 1897, No. 581,927; the former being a "design for a welt for shoes," and the latter "a new and useful improvement in shoes." Neither of these patents was designed or intended for the purpose under consideration, nor were they ever so used by the defendant, but if the fact were otherwise, they clearly do not, in our opinion, anticipate the complainant's patent; a further and detailed consideration of them therefore seems unnecessary.

But one other patent cited, No. 608,734, remains for our consideration; this also was issued to the defendant, bears date August 9, 1898, and is for a "vamp stay for shoes." This stay is made from material folded like the piping or edging above referred to, except that, after being folded, it is curved edgewise; that is the piping is bent or formed into (to use the language of the specifications) a "sinuous undulating shape," and the strip so shaped is thereupon cut into separate vamp stays, the cut being made on a longitudinal line through the center of the strip; each curve above and below such line constituting an individual stay. It does not appear that this article was ever made or used by the defendant, and it certainly seems to be open to all of the objections which are urged against the other patents cited, and furthermore, it does not disclose, any more than the stays made from the straight piping did, the peculiar and distinguishing features of the complainant's stay. These are all the matters which have been disclosed in this case, as affecting or showing the prior art.

The defendant then is placed in this position, having several patents

of his own for making vamp stays, he has discarded them all, and adopted the complainant's. As already suggested, we think the advantages disclosed by the complainant in his specifications, are not imaginary but real, and the defendant's conduct tends to prove that they are. The complainant's stay re-enforces the vamp; it does it neatly and with the least possible obstruction between the vamp and the foot of the wearer of the shoe; the outer surface of the vamp is not made uneven or unsightly by its insertion, and it can be more readily and securely stitched to the vamp than any of the others; that is to say, there is less danger of its displacement by the needle or presser foot of the machine, and less danger of breaking or bending the needle when it takes the added obstruction caused by the insertion of the stay, than is the case with the others; these results are all produced by the tongue or narrow portion of the stay, which constitutes the material part of the complainant's invention. Nothing approximating this idea is disclosed in any of the cases considered, or by the evidence in the cause.

The defendant is an admitted infringer. The complainant's patent implies novelty and invention; the burden of proof to establish prior use and want of novelty is upon the defendant. Cantrell v. Wallick, 117 U. S. 689, 695, 6 Sup. Ct. 970, 29 L. Ed. 1017. Not only is the burden of proof upon the party setting up the defense; but it has likewise been held that every reasonable doubt should be resolved against him, 117 U. S. 696, 6 Sup. Ct. 970, 29 L. Ed. 1017. It is unnecessary to cite additional cases to show the law in the above respect. Notwithstanding the burden of proof resting upon the defendant, he has not attempted by expert evidence or otherwise, to show the relation of the alleged anticipating patents to the patent in suit. Under such circumstances, the courts do not, as a rule, pay much attention to such patents. Putnam et al. v. Von Hofe (C. C.) 6 Fed. 897, 902; Miller et al. v. Smith et al. (C. C.) 5 Fed. 359, 363.

We do not find any evidence in the case to overthrow the prima facie evidence of the validity of the patent, since every other patent cited shows either a single piece of leather unfinished and without any double edge; or if folded, fails to show a tongue or narrow portion folded back producing graduated or stepped sides to the stay. Moreover the defendant's unsuccessful efforts to produce a vamp stay which possessed the advantages of the complainant's, show conclusively that the complainant's construction constitutes real invention; had it been apparent the defendant, a manufacturer and user of vamp stays for many years, would, by virtue of his necessities, have realized it, or something approximating it, long ago. He certainly is in no position either to belittle the complainant's invention, or assert its lack of novelty. It is a simple device, but it answers the purpose for which it was designed, far better than any other, and we think discloses novelty and invention.

A decree in accordance with these views will be signed.