**PRESSTEEL COMPANY, a copartnership composed of Preston A. Jones and Wallace D. Runswick and Marvin Electric Manufacturing Company, Appellants,**

v.

**HALO LIGHTING PRODUCTS, INC., and Halo Lighting of California, Inc., Appellees.**

**No. 17716.**

United States Court of Appeals Ninth Circuit.

March 6, 1963.

Gardner & Zimmerman, Joseph B. Gardner and Harris Zimmerman, Oakland, Cal., for appellants.

Max R. Kraus, Chicago, Ill., and Francis A. Utecht, Los Angeles, Cal., for appellees.

Before BARNES and HAMLIN, Circuit Judges, and TAYLOR, District Judge.

BARNES, Circuit Judge.

This is an action for infringement of United States Patent No. 2,561,986, entitled "Recessed Light Fixture with Separate Outlet Box." Jurisdiction of the district court was based upon Title 28, United States Code, Section 1338(a). Jurisdiction of this court is based upon Title 28, United States Code, § 1291.

Plaintiffs-appellants, owners of Patent No. 2,561,986, brought this action against appellees charging infringement of their patent, issued in the name of Preston A. Jones (hereinafter referred to as Jones), a partner of Pressteel Company, one of the appellants, and assigned to the four plaintiffs-appellants (hereinafter referred to as appellants).[1]

Jones' patented recessed light fixture consisted of a rectangular shaped box enclosure (called a lamp housing), containing a lamp socket and bulb. A conduit extended from the lamp housing to the outlet box, which were spaced one inch apart and enclosed the electric wiring between the two. Two removable covers, one on the side portion of the lamp housing, and opposite and adjacent

---

1. Throughout this opinion, Letters Patent No. 2,561,986 (Exhibit 1), as the sole patent in suit, is referred to as the "patent," or the "patent in suit."

thereto a like covering on the outlet box facilitated access to the outlet box from the interior of the lamp housing.

Jones' testimony was that he designed his patented light fixture to eliminate the following difficulties of prior similar fixtures: (1) To lessen installation difficulties and attendant expenses; (2) to decrease the temperature at the wiring connection below 60° centigrade, and thereby avoid the installation requirements of the National Electric Code.[2] The latter was achieved by spacing the outlet box one inch from the housing instead of the usual one foot or more.

The court below held the patent invalid because it failed to disclose any inventive advance over the prior art. For this reason, the court held that no finding on the question of infringement was necessary, and made none. This, together with the positive finding of a lack of invention, is urged as error.[3]

Appellants' various specifications of errors can be summarized to form a single question: Did the court below err in finding and concluding that the patent in suit was invalid as failing to disclose any inventive advance over the prior art and therefore was not an invention requiring inventive faculties because the

"invention" was obvious at the time made to any person having ordinary skill in the art? We hold the court did not err.

Appellants cite 35 U.S.C. § 282: "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it", and contend that appellees failed to overcome the presumption of validity of the patent. Appellants contend that appellees' proof of the existence of appellants' own 1945 and 1947 fixtures is not enough. The court found it was. "Whether an improvement patent amounts to invention is a question of fact;" Pointer v. Six Wheel Corporation, 9 Cir., 1949, 177 F.2d 153 at 159 (cases cited); and, "So is the determination of the fact whether the improvement presents some uncommon advance in the art or mere exercise of 'the skill of the calling.'" (cases cited) Unless exceptional circumstances exist, such a factual determination has great weight with this court.

Appellees contend that neither the 1945 nor the 1947 fixtures of appellants or the National Electric Code were before the patent office and were not considered by it before allowance of the patent in suit.[4] If this contention be true, and the 1945 and 1947 fixtures show

2. The 1947 National Electric Code required that the outlet box be spaced "at least one foot" from the lamp housing and that "at least four feet" of metal conduit or raceway extend between the lamp housing and outlet box for passage of asbestos covered wire (rated at 150° centigrade), connected to household wire (rated at 60° centigrade).

3. Appellants' Specifications of Errors:
1. The district court erred in finding and concluding that the patent in suit is invalid as failing to disclose any inventive advance over the prior art.
2. The district court erred in failing to find and hold that the defendants' recessed structure infringes upon the claims of the patent in suit.
3. The district court erred in finding that the things described and patented in and by the patent in suit were not an invention.
4. The district court erred in finding that the things described and patented in and by said patent did not require any

exercise of the inventive faculties for its production.
5. The district court erred in finding that there was and is no substantial difference between the subject matter disclosed in the patent in suit and the 1945 type of fixture made by plaintiff-appellant Pressteel Company, and the same type of fixture made by plaintiff-appellant Marvin in 1947.
6. The district court erred in finding that the spacing between the junction box and lamp housing would have been obvious at the time the invention was made to any person having ordinary skill in the art.
7. The district court erred in finding and concluding, on any grounds, that the patent in suit is invalid.
8. The district court erred in adjudging that the action be dismissed.

4. Appellants omit any reference in their brief to support this statement and it is not apparent from the transcript of record what foundation this statement has.

the claimed invention, and are "pertinent art," the usual presumption of validity which attaches to a patent is dissipated. In Jaybee Mfg. Corp. v. Ajax Hardware Mfg. Corp., 9 Cir., 1961, 287 F.2d 228, the court, per curiam, at page 229 said:

"Generally, the action of the Patent Office in allowing the patent creates a presumption of validity. However, even one prior art reference which has not been considered by the Patent Office may overthrow this presumption. [Citing cases.] When the most pertinent art has not been brought to the attention of the administrative body the presumption is largely dissipated. [Citing cases.] The facts in the present case justify the invocation of such rules."

Appellants urge the presumption of validity is strong. The exception to the general rule of presumption of validity of a patent was followed by this court in Jacuzzi Bros. v. Berkeley Pump Co., 9 Cir., 1951, 191 F.2d 632, 634–635, where we said: "The presumption of validity of administrative grant has been in recent years almost reduced to nullity in patent cases."

Appellants urge that appellees did not produce a single witness to support their asserted defense of lack of invention, but produced only prior patents. Appellants cite several old cases which are convincing. However, this case falls within an exception recognized in all three of appellants' cited cases:

(1) In Waterman v. Shipman, 2 Cir., 1893, 55 F. 982, the court stated:

"To sustain the defense of want of novelty the defendants have set up in their answer, and offered in evidence, a large number of patents prior in date of those of the complainant. In the absence of any expert testimony to explain these patents, or indicate what they contain tending to negative the novelty of the complainant's patents, we do not feel called upon to examine them. *There may be cases in which the character of the invention has so little complexity that such expert testimony is not necessary to aid the court in understanding whether one patent, or several patents considered together, describe the devices or combination of devices which are the subject-matter of a subsequent patent; but this is not one of them.*" (Emphasis added.)

(2) In Charmbury v. Walden, C.C.D. N.J., 1905, 141 F. 373, 377, the court reiterates the Waterman rule, supra;

(3) In General Electric Company v. Germania Electric Lamp Company, C.C. D.N.J., 1905, 174 F. 1017, the court relied on Waterman and Charmbury, supra, and adopts the same reasoning.

The record discloses that the subject matter is simple,[5] the prior art was explained by appellants' witness and by both counsel. The court asked numerous questions throughout the trial, showing a thorough understanding of the subject matter and issues.

In the case of Armour & Co. v. Wilson & Co., 7 Cir., 1960, 274 F.2d 143, the court heard an appeal on very similar issues en banc in order to resolve the standards to be applied in determining the validity of a patent within the scope of appellate review. After an extensive survey of case law the court concluded that:

" * * * the rules governing the trial of patent cases are no different than in other types of civil litigation, and further, that the scope of our review on appeal follows the same pattern.[6] We look at the findings of fact as to invention in the way that such factual determinations are generally reviewed. We examine the standard of invention

---

5. The patent deals with two simple components and their relation to each other.

6. Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A. The appellate court is not at liberty to review a finding of fact of the district court unless "clearly erroneous."

applied to these facts as a question of law, as we have done in other areas. If anything we have said in prior opinions strays too far from this conclusion, such holdings are now modified to conform to the views expressed herein."

"The standard of patentability is a constitutional standard; and the question of validity of a patent is a question of law." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162.

"Whether the thing patented amounts to a patentable invention" is "a question of law," Mahn v. Harwood, 1884, 112 U. S. 354, 358–359, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665; Lincoln Engineering Co., etc., v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, but the case may turn on a question of fact.

This court in the recent case of National Sponge Cushion Co. v. Rubber Corp. of Cal., 1961, 9 Cir., 286 F.2d 731, reversed a judgment notwithstanding the verdict saying: "In this case, as in many other cases where a claimed invention is attacked on the ground that the claims of patented devices were anticipated by earlier patents, the decision as to validity may turn upon a question of fact." See Judge Pope's discussion in his concurring opinion in Bergman v. Aluminum Lock Shingle Corp., 9 Cir., 1958, 251 F.2d 801, 809. Oriental Foods, Inc. v. Chun King Sales, 9 Cir., 1957, 244 F.2d 909, 913; Kwikset Locks, Inc. v. Hillgren, 9 Cir., 1954, 210 F.2d 483; Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971, 973.

The test of invention is, as set forth in the case of Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, at pages 89 and 90, 62 S.Ct. 37, 86 L.Ed. 58:

"* * * [that] more must be done than to utilize the skill of the art in bringing old tools into new combinations [cases cited]. * * * We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. * * * [T]he device must not only be 'new and useful,' it must also be an 'invention' or 'discovery.'"

Reckendorfer v. Faber, 92 U.S. 347 at pages 356–357, 23 L.Ed. 719, put it this way: "Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable." What was said there is equally applicable here.[7] The finding of fact in the district court was:

"9. There was and is no substantial difference between the subject matter disclosed in the patent in suit and the prior Pressteel fixtures made in 1945 and the Marvin fixtures made in 1947 except for the spacing and that spacing would have been obvious, at the time the claimed invention was made, to any person having ordinary skill in the art. Said patent No. 2,561,986 is invalid for lack of invention."[8]

A comparison of the 1945 Pressteel fixture and the 1947 Marvin fixture (P. 9, Appellees' Brief) with the patent in suit shows an element for element likeness, *except for the spacing*. The National Electrical Code requires some spacing between lamp housing and outlet box. (See note 2, this opinion.) This spacing is not added by the claimed invention, but only the amount thereof. According to the inventor's testimony, one thirty-seconds of an inch spacing would not work—two inches would. *No required space is set forth in the patent.*

As this court said in Aetna Steel Products Corp. v. Southwest Products Co., 9 Cir., 1960, 282 F.2d 323: "* * * [W]e are committed to the rule announced by the Supreme Court in Great

---

7. See Oriental Foods, Inc. v. Chun King Sales, Inc., 9 Cir., 244 F.2d 909, 913.

8. Tr. p. 26, 35 U.S.C. § 103. Griffith Rubber Mills v. Hoffar, Note 11, 9 Cir., 313 F.2d 1, decided February 4, 1963.

Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162 [citing other cases.]" The rule in the Great Atlantic case is:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

The record amply supports the district court's findings of noninvention, and we agree with it.

Appellants point out that along with Prescolite Manufacturing Corp., a related corporation, 3,342,279 lighting fixtures were sold in the period between 1947 and June of 1961 (R. 85, 86), compared to 1,316,540 sales of the 1945 type fixture (R. 86). Appellants' position is as stated by one of their cited cases at page 532: "So great and immediate a success speaks strongly of invention adding emphasis to the strong presumption of invention, raised by the issuance of the patent." [9]

Due to what has been said before regarding noninvention, this argument is not available to appellant. The Jaybee case, supra, restates the rule:

"It is true that commercial success may be taken into consideration in determining the validity of the pat-

ent. The trend is to use such success in determining the validity of a patent as a makeweight only where the patentability question is close. * * * Such success should not be relied upon to establish patentability except in cases that are otherwise doubtful. * * * [W]here invention is plainly lacking, a commercial success cannot fill the void." (287 F.2d 230.)

The judgment is affirmed.

---

9. Research Products Co. v. Tretolite Co., 106 F.2d 530.