## In re ARENDT.

### Patent Appeal No. 3332.

Court of Customs and Patent Appeals.

Jan. 26, 1935.

W. B. Morton, of New York City, and C. M. Fisher, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 9 and 11 of appellant's application upon the ground that such claims involve only the same invention as that claimed in appellant's patent No. 1,790,634, issued January 27, 1931, upon an application filed on August 25, 1923. Appellant's instant application was filed on December 17, 1929; it recites that: "This application is a continuation of my earlier filed application Ser. No. 508,191, filed October 17, 1921, and also of my copending application Ser. No. 659,-300, filed August 25, 1923."

The examiner also rejected said claims upon certain references, but the Board of Appeals did not affirm his rejection upon that ground.

The claims here involved are method claims and read as follows:

"9. The method of operating a vehicle propelling plant consisting of an engine, a generator of an overall capacity not substantially greater than the average power requirements of the vehicle over a period of operation, a motor and a battery in circuit with the generator and motor and of a capacity insufficient to receive the full output of the generator without injury thereto, which consists in operating the generator at its full capacity output at all times except when the amount of current flowing to the battery would be sufficient to injure the same."

"11. The method of operating a vehicle propelling plant consisting of an engine, a generator of an overall capacity not substantially greater than the average power requirements of the vehicle over a period of operation, a motor and a battery in circuit with the generator and motor and of a capacity insufficient to receive the full output of the generator without injury thereto, which consists in normally operating the generator at full capacity while the vehicle is under power, stopping the operation of the generator when the battery is fully charged and restarting the generator when the battery is discharged a fraction less than half its capacity."

Certain claims were allowed by the examiner, with which claims we are not here concerned.

Appellant's application relates to a gas-electric vehicle, including a prime mover, such as a gas engine, which drives an electric generator, which generator, through an electric motor, propels the vehicle. A storage battery is arranged in parallel with the motor, so that the generator can charge the battery and the battery can supply current for driving the vehicle when the load is too heavy for the generator. The claims here involved are for a method of operating the

units of apparatus enumerated in said claims.

Appellant's patent, No. 1,790,634, is not prior art for the reason that when it was issued appellant's instant application was pending in the Patent Office. Therefore, the only question before us is whether the invention here claimed is covered by any of the *claims* of appellant's said patent.

It is elementary that an applicant cannot receive two patents for the same invention, and if appellant has already received a patent for the *invention* here claimed, the decision of the Board of Appeals with respect to the claims here involved should be affirmed.

Appellant's said patent is for certain specified apparatus, and no method claims are included therein. Whether the claims here involved would have been allowable in appellant's said patent we need not here determine.

Claims 4, 5, and 16 are illustrative of the claims allowed in said patent and read as follows:

"4. A propulsion system for vehicles having an electric operating motor, an engine for supplying power therefor, a generator operated by said engine, a storage battery, said storage battery having a capacity insufficient to receive the full charge of said generator, connections between the generator, the storage battery and the electric motor whereby the storage battery assists in driving the motor when the load thereon exceeds a predetermined value and is charged by the generator when the load is below such value, means for reducing the generator output when the load on the electric motor falls below a predetermined minimum to a point such that the battery may receive the entire output of the generator without injury, and means independent of said output control for stopping said engine when the battery is charged and for restarting said engine when the battery is partially discharged.

"5. A propulsion system for vehicles comprising an electric operating motor, an engine for supplying power therefor, a generator operated by the engine, a storage battery, connection between the generator, the storage battery and the electric motor whereby the storage battery assists in driving the motor when the load thereon exceeds a predetermined value and is charged by the generator when the load is below such value, a throttle control for said engine comprising *automatic* means for operating said throttle to reduce the engine output when the load on the electric motor falls below a certain minimum, means for utilizing said storage battery and generator for starting said engine, said means and said throttle control being so arranged as to maintain a fully open throttle when said engine is being started." (Italics ours.)

"16. In an apparatus of the class described, the combination of an electric operating motor, a prime mover for supplying power thereto, a generator operated by the prime mover, a storage battery, connections between the generator, storage battery and the electric motor, whereby the storage battery assists in driving the motor, when the load thereon exceeds the predetermined value and is charged by the generator when the load is below such value, a watt regulator for maintaining a practically constant energy output from the generator, means to reduce the watt regulator setting, means to *electrically disconnect the generator and stop the engine at a predetermined point of battery charge,* and means to *automatically* restart engine and generator at a predetermined point of battery discharge." (Italics ours.)

The Board of Appeals in its decision stated:

"Appellant particularly urges that the rejected claims are method claims while the claims of the patent are drawn to apparatus. The applications of both cases were copending and it is appellant's position that the subject matter of the method claims is broader, is capable of being carried out by manual control and is therefore not limited to the specific apparatus of the patent.

"There is no question but that under proper conditions method claims which were being asserted in an application at the time of issue of a patent, containing claims to a specific apparatus for carrying out the method, may be allowed in a second patent; but it must be clear that the apparatus claims are specific and that it would be obvious to carry out the operations of the method claims in some substantially different way than that set forth in the broadest apparatus claim in the patent.

"We consider that in the patent the means for reducing the generator output and the means for stopping the engine when the battery is charged are so broad as to cover hand control means for the elements of the system referred to. It is true that this claim includes both the limitations found in the two claims on appeal but we are

satisfied that this does not provide any proper line of division. Even if this claim should be construed as restricted to automatic means, we do not consider that there is any patentable distinction. We do not believe that appellant in the two cases has disclosed two independent inventions along the broad lines covered by the appealed claims and claim 4 of the patent but we consider that the claims of both cases cover substantially the same invention and that the claims differ in words merely, without even any substantial difference in the scope. We agree with the examiner that the method claims merely set forth the function of the apparatus of the patent. We are fully satisfied, therefore, that there is no line of division between the appealed claims and those of the patent and that the examiner was justified in rejecting them for this reason."

It is appellant's contention that the means for controlling the several units described in the involved claims might be independent, manually operated elements, whereby an operator, in pursuance of appellant's specifications, could carry out the sequence of operations therein defined and successfully operate a vehicle carrying the prescribed load; that it is this method of operation to which the claims here on appeal are directed, while appellant's said patent is directed to an independent improvement on the invention claimed in the case at bar, whereby certain of the steps of appellant's improved method of operating a gas-electric propulsion system are carried out automatically; and that therefore the invention for which appellant has received a patent is not the same invention that is here claimed.

The position of the solicitor for the Patent Office is concisely stated in his brief as follows:

"The true test of independence of the subject matter of the method claims and the apparatus claims lies not in the disclosures in the specifications, but in comparison of the things enumerated in the respective claims themselves. The method claims state the doing of certain acts. The apparatus claims claim broadly "means for" doing the same acts, without reference to any specific means. The apparatus claims are intended to cover all means for doing the acts specified. That being so, there is no other apparatus for doing the acts specified, or the method can be carried out only by the apparatus claimed. The case, of course, might be different if the apparatus claims involved any particular structure of means for performing the functions indicated. As before indicated, it is conceivable that a variety of specifically different means might be used to perform the same function. But that is not this case, because here the apparatus claims are not limited to any particular structure of means. In other words, there is but a single inventive idea, with no patentable distinction, in setting forth a series of steps of process or in setting forth means for doing the same series of steps. * * *"

We think the foregoing is a correct statement of facts with reference to the method claims here involved and also respecting some of the apparatus claims of appellant's patent, notably claim 4 hereinbefore quoted. There are, however, some claims of said patent which set out specific means for automatically performing some of the operations set forth in the claims. With these claims of the patent, however, we are not concerned, for they were not relied upon by the Patent Office tribunals.

The real question before us is whether claims of the patent, of which claims 4, 5, and 16 are illustrative, require automatic control of certain of the steps of operating a gas-electric propulsion system such as is described in said claims. If said claims cover hand-operated, as well as automatic, control of such steps, it is clear to us that the claims here involved cover the same invention as is embodied in said patent claims, and we need not inquire whether the addition of automatic control set forth in some of the claims of the patent covers a separate invention, distinct from that which is here claimed.

Appellant contends that the use of the word "when," as in claim 4 of the patent, for example, implies automatic control and excludes hand-operated control. We quote again from claim 4 as follows: "4. * * * means for reducing the generator output *when* the load on the electric motor falls below a predetermined minimum to a point such that the battery may receive the entire output of the generator without injury, and means independent of said output control for stopping said engine *when* the battery is charged and for restarting said engine *when* the battery is partially discharged." (Italics ours.)

Upon this point, it is sufficient to say that if appellant's contention with respect thereto is correct, then it would be likewise true that the claims here on appeal call for a method of operation in which the operation

is controlled by automatic means, whereas appellant's position is that said involved claims include hand-operated controlling means and that they are therefore distinguished from the claims of the patent. For instance, in claim 9, here involved, the following is found: " * * * which consists in operating the generator at its full capacity output at all times except *when* the amount of current flowing to the battery would be sufficient to injure the same." (Italics ours.)

Similarly, in claim 11, here involved, there is found: " * * * stopping the operation of the generator *when* the battery is fully charged and restarting the generator *when* the battery is discharged a fraction less than half its capacity." (Italics ours.)

It thus appears that in construing the claims of the patent appellant gives one significance to the word "when," and in construing the same word when similarly used in the claims on appeal he gives to it exactly the opposite significance.

We are in agreement with the view of the Board of Appeals that the language of claim 4 of the patent, and of certain other claims thereof, is broad enough to cover hand-control means for operating the elements of the system set out in the claims. Certain claims of the patent, of which claims 5 and 16 are illustrative, specifically claim automatic controls, without reciting any specific form of automatic control. Claim 4, and certain of the other claims, do not specify automatic control at all.

■ It is well established that, in construing a claim of an application or patent, it is proper to consider other claims in the application or patent. Marshall and Levandosky v. Ledwinka, 67 F.(2d) 495, 21 C. C. P. A. (Patents) 728; Oldroyd v. Morgan, 57 F.(2d) 358, 19 C. C. P. A. (Patents) 1111; Andrews v. Nilson, 27 App. D. C. 451; Ryder v. Schlichter (C. C. A.) 126 F. 487; French v. Buckeye Iron & Brass Works (C. C. A.) 10 F.(2d) 257, 262, certiorari denied, 271 U. S. 673, 46 S. Ct. 486, 70 L. Ed. 1144.

The case last above cited was an infringement suit, and one of the questions involved was whether certain claims of the patent there involved were limited to automatic mechanism, or included mechanism manually operated. The Circuit Court of Appeals (Sixth Circuit) in its opinion in said case stated: "The effect of the argument made by appellee against infringement is that the claims in suit must be limited to the specific structure wherein a falling float in the bottom kettle automatically trips into action the mechanism for opening and closing the successive gate doors. It is quite impossible to accept this argument. ' The French specification and drawing showed this construction, but we find that the specification expressly stated that, instead of this full automatic action, the starting gear might be manually operated, if desired, and then we find that the patent contains a group of narrow claims limited to this full automatic action, and a group of broader claims not so limited. Under familiar principles the limitations of the former cannot be imported into the latter."

■ So in the case at bar, appellant's patent clearly sets forth the invention here involved and also sets forth as an improvement of the invention certain automatic controls of the apparatus. As hereinbefore indicated, certain of the claims of the patent specifically claim such automatic features, while other claims, such as claim 4, do not. Therefore, under the rule supported by the case above cited and quoted from, we must hold that claims which do not specifically embody such automatic controls are not limited to automatic controls, for we cannot read into broad claims, such as claim 4 of the patent, limitations which are specifically set forth in other claims of the patent.

■ Claim 5 clearly provides for "automatic means for operating said throttle to reduce the engine output * * *." Claim 16 clearly provides for automatic means to "stop the engine at a predetermined point of battery charge, and means to automatically restart the engine and generator * * *." Claim 4, and certain other claims of the patent, contain no such limitations.

Being of the opinion that the process here claimed embodies the same invention disclosed and *claimed* in appellant's patent, the decision of the Board of Appeals must be affirmed.

' As hereinbefore indicated, in view of the conclusion we have reached, it is unnecessary for us to decide whether claims of appellant's patent merely reciting automatic means of control of the apparatus, without specifying any particular means of automatic control, constitute any patentable distinction over the claims in the patent which do not contain such recital.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.