25 C.C.P.A.(Patents)

**COTTRELL v. SHAFER.**

Patent Appeal No. 3921.

Court of Customs and Patent Appeals.

May 31, 1938.

Wilkinson, Huxley, Byron & Knight, of Chicago, Ill. (George L. Wilkinson, Ralph Munden, Howard Somervell, and Orrin Garner, all of Chicago, Ill., and E. W. Shepard, of Washington, D. C., of counsel), for appellant.

Clarence D. Kerr, of New York City (E. C. Sanborn, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

In this interference proceeding Cottrell, the junior party, appeals from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences which awarded priority to the senior party Shafer. Appellant is a patentee, whose patent, No. 1,970,841 was granted August 21, 1934, on an application, serial No. 642,-094, filed November 10, 1932, which was a division of an application, serial No. 634,-747, filed September 24, 1932. The application of appellee, serial No. 600,398, was filed March 22, 1932.

Appellant alone took testimony. Both parties filed preliminary statements. Although the preliminary statement of appellee does not appear in the record, the Examiner of Interferences, in his decision, says that—

"In his preliminary statement, Shafer states that the invention defined in counts 8, 9 and 34 was constructively reduced to practice by the filing of his application Serial No. 587,036 on January 16, 1932. * * *"

Accordingly, we accept as a fact that the preliminary statement of appellee was duly filed and that the dates set forth by the Examiner of Interferences are correct.

Appellant, in his preliminary statement, alleged conception of the invention on February 2, 1931, and its constructive reduction to practice on September 24, 1932, the date of filing his parent application previously mentioned.

Appellee, having filed his application more than six months prior to the filing of the application in the parent case of appellant, is the senior party, and the burden of proving priority by a preponderance of the evidence rests upon appellant.

The counts before us, in accordance with the reasons of appeal, are 1 to 9, inclusive, 13 to 21, inclusive, and 34.

Count 1 is illustrative and reads as follows:

"1. In a car truck, the combination of tension and compression members, spaced integral connecting columns forming a window with said tension and com-

pression members, said tension member having a spring housing disposed below said window, said housing having spaced seats therein fixed with respect thereto and being slotted for communication with said window, spring means supported on said seats, a load carrying member supported on coil springs in said window and provided with a member extending through the slot and in engagement with said spring means, said spring means being of different character than said coil springs and operating in the same direction as said coil springs."

The subject matter of the counts relates to special features in the construction of trucks used on railway cars, to the specific manner in which coil and semi-elliptical leaf springs are mounted in the side frame of the truck, and to the way in which the springs are related to the bolster which is the load-carrying member. The object of the invention is to provide a truck which gives good riding qualities to the car.

The Examiner of Interferences and the Board of Appeals both held that appellee is entitled to conception of the invention and its constructive reduction to practice for counts 8, 9, and 34, as of January 16, 1932, the filing date of his aforesaid prior application, and they also held that, as to all the other counts, appellee is entitled to conception and constructive reduction to practice on March 22, 1932, the date of his present application. These holdings are, not disputed by appellant.

Both tribunals below held that, on the counts before us, appellant proved his date of conception as early as December 12, 1931, and constructive reduction of the invention to practice on September 24, 1932, the date of filing his aforesaid prior application. These holdings are not disputed by appellee.

The only question presented for decision is whether appellant has shown diligence in reducing his invention to practice from a time just prior to January 16, 1932, up to September 24, 1932, in the case of counts 8, 9, and 34, and from a time just prior to March 22, 1932, up to September 24, 1932, on the rest of the counts before us.

Appellant is a mechanical engineer and assistant to the chief mechanical engineer of American Steel Foundries, appellant's assignee. The record discloses that on December 12, 1931, complete patent sketches had been made by appellant, but that no steps were taken to prepare an application for patent before September 1932.

It appears that during this time appellant's assignee was busy conducting a series of expensive and elaborate road tests with various car trucks, many of which embodied coil and elliptical spring combinations. In all there were one hundred tests made, but in not a single instance did any of the devices tested conform to the counts of this interference. There is no contention on the part of appellant that they did.

When questioned as to what was done with the patent sketches, appellant's superior answered as follows:

"At that time we had a considerable number of novel truck constructions and spring systems under consideration and were engaged in testing some of them. I decided that these drawings would be kept under consideration during those tests which were being conducted to determine the merits of some of these principles involved in these constructions, here, and that when these tests had gone far enough, if we could appraise the value of some of the principles involved we would be able to decide whether patent application should be made."

Appellant contends that the tests made by his assignee include a reduction to practice of the "principle" of his construction. By this contention it appears that appellant means that tests were made which involved bolster support by coil and leaf springs, and in which construction coil and elliptic springs act in parallel, the deflection of the coils being matched by the deflection on the elliptic.

Appellant admitted that none of the constructions shown on his patent sketches were actually tested.

We are of opinion that the tests made were insufficient to constitute diligence in reduction to practice. They all concerned the varying riding effects produced by different arrangements of leaf and coil springs set in different kinds of trucks. No truck used in the tests met the construction shown in counts 8, 9, and 34, which are drawn to truck structure alone with the springs excluded. No construction as described in these counts was

attempted by appellant or his assignee during the critical period.

It appears from the record that appellant's assignee was not interested in making and testing constructions based on appellant's idea, but was particularly concerned in the relative proportions of leaf and coil springs to the end that it sought a truck which would enable a railroad car to ride with comparative smoothness. We can see no "principle" shown by the said tests other than that in trucks, different from those described in the counts, leaf and coil springs in certain arrangement and proportion in certain of the trucks would produce a better result than in different arrangements and proportions in others of the trucks.

There is no limitation of spring proportion, however, in the invention defined by the counts; hence it was not necessary to experiment on proportions to be certain of the merits of the truck covered by the counts. With respect to the principle of the use of coil and leaf springs in parallel combination, appellant's assignee had recognized it to be worth protection when it caused to be filed, on June 12, 1931, a patent application of Bachman, serial No. 543,763, which shows this very arrangement.

Counts 8, 9, 17, and 34 did not call for more than one spring in conjunction with certain truck features. There is nothing in the record to show that these truck features were ever made or tested by appellant or his assignee.

Fifty of the one hundred tests were made, starting December 31, 1931, with the spring arrangement of a Kadel and Barrows reissue patent, No. 18,266, granted November 24, 1931. This patent is not owned by appellant's assignee. It discloses full elliptic springs in parallel combination with coil springs in the side frame. But appellant's assignee apparently had these tests made for the purpose of ascertaining what relative size proportion in the leaf and coil springs would give the best result. With respect to the experiments with the Kadel and Barrows spring system, the Examiner of Interferences said that—

"The Kadel and Barrows arrangement had been reduced to practice at least as early as December 3, 1927, the filing date of the original patent, so that the work on that form can hardly be considered

diligence in reducing it to practice. Moreover, the original patent was granted September 10, 1929, and hence even before the tests were started it was a statutory bar for so much as it disclosed. Cottrell's invention and the subject matter defined in the present issue, accordingly, are confined to features that are not shown in the Kadel and Barrows patent. It is believed that work upon the Kadel and Barrows prior art structures can not relieve Cottrell from proceeding with reasonable diligence in regard to the novel distinguishing features here in issue. * * *"

All of the testimony on behalf of appellant appears to be directed toward the utility of the broad feature of the combination of coil and leaf springs in parallel to support the bolster, as shown in the Kadel and Barrows patent. Appellant's patent sketch drawing, which contained all of the information necessary to draw his application, even if, as is stated, it was kept under consideration during the time of the tests, was not used, nor were the novelties disclosed by it ever started on their way to realization. It takes something more than merely keeping a complete patentable idea under consideration to constitute proof of diligence in reduction to practice. Appellant could not receive a patent for the broad idea of coil and leaf spring combination over the patent of Kadel and Barrows, and his burden was to prove diligence on the specific invention which is patentably different from it. This we hold he did not do.

In the decisions of the tribunals below, the contention of appellee that the large amounts of money spent by appellant's assignee and the elaborate tests made were for the purpose of commercial exploitation by it of trucks which do not read on the counts, met with approval. In view, however, of our conclusion, it is not necessary to discuss this contention of appellee.

We have reviewed with care the decisions called to our attention by appellant, but because of the facts herein set out we feel they are not applicable to the present issue.

We are of opinion, as before stated, that the tests made were insufficient to constitute diligence in reduction to practice. They were all concerned with the varying riding effects produced by different arrangements of coil and leaf springs

in combination, set in different kinds of trucks, none of which conforms to the counts. No truck construction, as described in the counts, had been attempted, and since it is the novelty of the truck construction of the invention, with special arrangement of semielliptic leaf and coil springs in combination with relation thereto, that constitutes the invention, and no step having been taken toward testing or making such a structure, we hold that the decision of the Board of Appeals should be and it is hereby affirmed.

Affirmed.