## DANIELS v. PERMUTIT CO.
### No. 1251.

*District Court, D. Delaware.*
Feb. 17, 1942.

Ira J. Wilson, of Chicago, Ill., and Everett E. Borton, of Wilmington, Del., for plaintiff.

Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del. (Alfred M. Houghton and James H. Littlehales, both of Washington, D. C., of counsel), for defendant.

GOODRICH, Circuit Judge.

### Findings of Fact

1. This is a suit brought under the provisions of Section 4915, Revised Statutes, 35 U.S.C.A. § 63, upon the refusal of the Commissioner of Patents to grant a patent to the plaintiff, Lee G. Daniels, on claims constituting the issue of Interference No. 70,285, entitled Lee G. Daniels v. Thomas B. Clark.

2. Plaintiff Lee G. Daniels is the owner of an application for United States Letters Patent on a valve, filed August 31, 1931, bearing Serial No. 560,303.

3. Defendant the Permutit Company is the assignee of United States Letters Patent No. 2,111,169, issued March 15, 1938, upon an application for patent on a valve, filed by defendant Thomas B. Clark on June 25, 1931, Serial No. 546,694.

4. An interference was instituted in the Patent Office between the aforesaid pending applications of Daniels and Clark consisting of counts 1 to 5, inclusive, which appear in the Daniels application as claims 32, 44, 57, 58, and 59, respectively, and in the Clark patent No. 2,111,169 as claims 6, 7, 1, 4 and 5, respectively.

5. The counts of the interference were five in number; counts 1 and 2 originated in the Daniels application, and counts 3, 4, and 5 originated in the Clark application. All of the counts recite in substance a lift-turn valve having a resilient gasket interposed between plate-like rotary and stationary multi-ported members, wherein the rotary member is moved away from its seat and rotated to different positions in manipulation of the valve and reseated to establish various flows therethrough.

6. Daniels conceived the invention in controversy April 11, 1931.

7. The Examiner of Interferences in the Patent Office awarded priority of invention as to counts 1 and 2 to Daniels and as to counts 3, 4 and 5 to Clark.

8. The Board of Appeals in the Patent Office reversed the Examiner as to counts 1 and 2 and awarded priority of invention of all five counts to Clark.

9. Counts 3, 4 and 5 originated in the Clark application, and each of said counts includes as one of its elements "a discoid ported gasket of soft resilient material of the nature of soft rubber."

10. Clark's file wrapper shows that the softness of the gasket was relied upon to distinguish from the prior art and obtain the allowance of the claims corresponding to counts 3, 4 and 5.

11. The gasket in Clark's Exhibit 62 valve completed in October, 1930, was manufactured by Voorhees Rubber Mfg. Co., bears the grade designation "15,514" and when manufactured was of a hardness of 83, according to the Shore Durometer, which is classified by the manufacturer as "medium hard."

12. The gasket in Clark's Exhibit 62 valve was manufactured by Voorhees Rubber Mfg. Co. and when embodied in the Clark Exhibit 62 valve in October, 1930, had hardened with age to a point closely approaching its present hardness, shown by a Shore testing instrument to be 95.

13. The hardness or softness of a rubber gasket is a relative designation.

14. The gasket embodied in the Clark Exhibit 62 valve in October, 1930, was not a gasket of soft resilient material of the nature of soft rubber required by counts 3, 4, and 5.

15. A Voorhees gasket having a hardness of approximately 65 is classified by its manufacturer as being "soft," and, if its hardness approaches 45, it is considered to be "very soft," i. e., the softest grade of cold water gasket manufactured by Voorhees Rubber Mfg. Co.

16. Tests made with a Shore hardness testing instrument show that the gasket in plaintiff's reduction to practice, Daniels Exhibit 17 valve, has a hardness of 63; that the gaskets employed in the commercial valves made under the Daniels application have a hardness of 58; that the gasket in defendants' commercial valve, Daniels Exhibit 110, made under the Clark patent, has a hardness of 65.

17. A new Voorhees gasket of grade 15,514 having a hardness of 83 is not soft enough to cooperate with rings around the ports of a rotor so as to form a seal and prevent leakage.

18. Repeated tests of plaintiff's commercial valve made in accordance with the Daniels application but equipped with a Voorhees grade 15,514 gasket showed leakage between the gasket and the rings around the ports of the rotor of one gallon in between fourteen and fifteen minutes.

19. Clark saw Daniels' drawings and patterns of Daniels Exhibit 17 valve on April 4, 1931.

20. Counts 1 and 2 are limited to a resilient gasket mounted on the stator and rings around the ports of the rotor adapted to be impressed into the gasket to form seals around the ports.

21. Clark never built a valve having rings around the ports of the rotor or made or had made, any drawings or written description of such rings prior to the preparation of his application for patent.

22. Clark's patent application as originally prepared disclosed the gasket as mounted on the rotor, instead of on the stator as required by counts 1 and 2.

23. Clark did not reduce to practice the subject matter of any of counts 1 to 5, inclusive, until the filing of his application in the Patent Office on June 25, 1931.

## Conclusions of Law.

1. The burden is upon plaintiff in this suit to prove by more than a mere preponderance of evidence that the Patent Office was in error in awarding priority of invention on all counts in Interference No. 70,285 to the party Thomas B. Clark.

2. Plaintiff Daniels is the owner of Daniels application for patent on Valve, Serial No. 560,303, filed August 31, 1931.

3. The Clark Exhibit 62 valve completed in October, 1930, did not constitute a reduction to practice of any of counts 1 to 5, inclusive.

4. Daniels Exhibit 17 valve constituted a reduction to practice of each of counts 1 to 5, inclusive.

5. Plaintiff Daniels was the first to reduce to practice the subject matter of each of counts 1 to 5, inclusive.

## Opinion.

This is an action under § 4915, Revised Statutes, 35 U.S.C.A. § 63, to determine priority in patent rights between Lee G. Daniels, plaintiff, and Thomas B. Clark, the rival claimant, and including the Permutit Company, assignee of Clark. The subject matter of the litigation here is the series of claims comprising the five counts of the interference (No. 70,285) instituted in the Patent Office between Daniels and Clark. The Examiner of Interferences in the Patent Office awarded priority of invention of counts 1 and 2 to Daniels and of counts 3, 4 and 5 to Clark. The Board of Appeals in the Patent Office awarded priority of invention of all the counts to Clark.

Upon the trial of the case in this court additional evidence was introduced by each party, part of it by deposition, part of it by oral testimony. The defendant now objects to the consideration of this evidence for the plaintiff urging that plaintiff is precluded from offering it under the doctrine of abandonment. Upon this point the court rules against the defendant and holds that the testimony is to be considered. Several reasons support this conclusion. The language of § 4915 is broad as to the "right of the parties to take further testimony". Furthermore, this proceeding is a trial de novo in equity in which the trial court is charged with the responsibility of considering all competent evidence "new and old" . Harper v. Zimmerman, D.C.Del. 1930, 41 F.2d 261, 264. Third, the defendant did not object to the testimony when introduced at the hearing. It may well be said that the objection now comes too late. See Wigmore on Evidence § 18. Finally, the defendant, himself, offered additional testimony and some of that offered by the plaintiff was in answer to or grew out of additional testimony offered by the defendant. The evidence offered at the hearing, therefore, will be considered and given such effect as the court thinks it to be entitled to receive.

Upon the merits the counts 3, 4 and 5 are first considered. They are stated as follows:

Count 3 (Daniels claim 57, Clark patent claim 1):

"3. A valve comprising two cooperative members, a discoid rotor having a flat face with ports therein, and a stator having a flat face with ports therein, the rotor being adapted to rotate about its axis and also to move along its axis, the ports in the rotor being adapted to register with the ports in the stator face, openings adapted to receive conduits for different liquids and in communication with the stator ports, the stator and the rotor being adapted in suitable angular positions of the rotor to establish communication through the valve openings for controlling a plurality of different liquid flows, a detachable member on the stator forming a chamber enclosing the rotor, a discoid ported gasket of soft resilient material of the nature of soft rubber interposed between rotor and stator, means for putting the rotor under a yielding pressure tending to force the rotor, stator and gasket together to form a tight seal in all the valve positions but normally preventing the rotor from being rotated without injury to the gasket, actuating means adapted both for moving the rotor axially a short distance away from the stator and also for rotating the rotor while moved away from the stator, said actuating means being adapted in operation to counteract said pressure thus relieving pressure from the gasket to permit free rotation and to prevent injury to the gasket, but permitting pressure to be exerted upon the gasket in each of the valve positions to maintain the seal."

Count 4 (Daniels claim 58, Clark patent claim 4):

"4. The structure of count 3, the valve being provided with a member provided with an annular rim having notches corresponding to the positions of rotation of the rotor, the valve actuating means having a handle adapted to engage said notches and the rim being adapted to engage said handle."

Count 5 (Daniels claim 59, Clark patent claim 5):

"5. The structure of count 3 wherein the means for putting the rotor under yielding pressure comprises a spring pressing the rotor against the stator."

Priority was awarded defendant by the Patent Office officials on the basis of their findings concerning the various dates of conception and reduction to practice of the idea which is the patent in issue here.

Both the Examiner and the Board of Appeals fixed October, 1930, as the date defendant reduced counts 3, 4 and 5 to practice, and May, 1931, as the corresponding date for plaintiff. The latter now concedes that point but argues that what the defendant did in October, 1930, cannot serve as a reduction to practice so as to support the issuance of a patent on the basis thereof. The contention is sound.

■■ It is settled that the alleged reduction to practice must contain every element which comprises the invention. Akers v. Papst, Cust. & Pat.App.1940, 113 F.2d 136; 1 Walker on Patents, Deller's Ed.1937, 385. One of the basic features of Clark's patent here is, as described in count 3, "a discoid ported gasket of soft resilient material of the nature of soft rubber". That this phrase discloses an essential factor is apparent from Clark's specifications and other claims in his patent, to both of which reference may be made. In re Arendt, Cust. & Pat.App. 1935, 74 F.2d 765; Pelzer v. Weaver, Cust. & Pat.App.1938, 97 F.2d 166; 2 Walker on Patents, Deller's Ed.1937, § 261. His claim 6, which in this suit is count 1, provides for projecting rings around openings on one part of the valve; these rings were "adapted to press into the resilient gasket". Obviously the gasket must be soft to permit this to be done. In fact, this, according to Clark's own statement, was the distinguishing feature over the prior art, in that the joinder of the rings and the soft gasket produced a leak-proof seal. Likewise the description contained in the patent points out that in order to perform this essential function in the operation of the lift-turn valve, there is a "ported gasket of soft rubber or other yieldable material".

■ Consideration may be given also to the file wrapper and the history of its presentation and development in the Patent Office. The Supreme Court has said that " * * * a patentee cannot broaden his claim by dropping from it an element which he was compelled to add in order to secure his patent". Smith v. Snow, 1935, 294 U.S. 1, 14, 55 S.Ct. 279, 284, 79 L.Ed. 721. The same thought is the basis

of the recent holding in Schriber-Schroth Co. v. Cleveland Trust Co. et al., 1940, 311 U.S. 211, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132. The history of Clark's file wrapper reveals that it required the addition of detailed descriptions of the material to be used in the construction of the gasket on the valve before the patent issued. His claims as originally presented called for no more than a "gasket", but the examiner rejected them on the grounds of lack of invention "in the use of a gasket between the * * * surfaces" of the valve. Clark submitted to the decision and his consequent amendments specify in several ways the features of softness and resiliency in the gasket to be used.[1] It follows, therefore, that he cannot ignore the requisite that the gasket conform to these specifications. Schriber-Schroth Co. v. Cleveland Trust Co. et al., supra; Smith v. Snow, supra; I. T. S. Rubber Co. v. Essex Rubber Co., 1926, 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335. It is apparent also that these specifications comprise definite limitations on the claims which constitute the counts in this suit. It is not disputed that the claims measure the invention. 2 Walker on Patents, Deller's Ed.1937, § 256. The conclusion is inescapable, and it is well settled, that limitations therein cannot be disregarded: " * * * they must be established as a part of his conception and reduction to practice of the invention." Akers v. Papst, Cust. & Pat.App. 1940, 113 F.2d 136, 139.

■ The question then becomes whether the gasket on Clark's Exhibit 62 conforms to his claims. It is the court's opinion that

it does not and that neither at the time of the construction of the value nor at any other time did Clark's alleged reduction to practice contain a gasket of soft and resilient material. This point is now cleared up in the testimony which has been produced in this court. Indeed the defendant has asked for and is receiving a finding that the gasket on Exhibit 62 (Clark's reduction to practice) was of approximately 83 point hardness on the Shore Durometer when made and of 95 point hardness at the time of the trial. It appears also from the testimony of a disinterested witness that the gasket was close to the 95 point hardness when first installed on Clark's valve. The testimony of this and other witnesses revealed that the gasket was of hard rather than soft rubber. It follows that it cannot serve as a reduction to practice of a patent requiring a gasket of material in the nature of soft and resilient rubber.

■ Defendant maintains, however, that every inventor may compose his own lexicon and "that any rubber softer than ebonite is not 'hard' rubber". No doubt the inventor can use words in any way he pleases. But when he uses them in an unusual sense he must make his meaning clear. Strong-Scott Mfg. Co. v. Weller, 8 Cir., 1940, 112 F.2d 389; Dennis v. Pitner, 7 Cir., 1939, 106 F.2d 142. The former case points out that patentees, though given wide latitude in their use of terms, will receive the interpretation requested only if it is supported by the context. Authority cited by the defendant says no more than this. Our discussion above contains the answer: the context indicates a gasket

---

[1] It is said: "Claims 1 to 10, 12 and 19, have been amended to bring out in terms the novel use of especially soft and resilient gasket material. * * *

"There is evident novelty in applicant's invention in the use of a soft rubber gasket, into which the rotor is forced by powerful hydraulic pressure. A more secure seal is thereby obtained than is possible with hard gaskets."

And again: "Prior to the present invention all attempts to employ soft rubber in a multiport valve have been unsuccessful. The use of soft gaskets has been restricted to surfaces not having relative movement" (Pl.Ex. 96, Clark file wrapper p. 43).

In distinguishing a prior patent, it was pointed out also:

"Rosenbaum mentions 'rubber,' rubberized fabric and leather as suitable materi-

als for his gasket. He does not disclose soft rubber; a material hitherto unutilized in the rotary valve art. * * *

"Applicant has invented a new and useful valve for water softeners. Its utility and its advantages are not denied. Less accurate machining is necessary in applicant's valve than in an all metal valve having the rotor bearing directly against the stator, or even in a valve using an ordinary, relatively hard gasket.

"Applicant goes the limit in resiliency of his gasket. To ensure a tight seal, the gasket is made relatively thick and soft, and the rotor is allowed to press against the gasket with high pressure, compressing it against the stator, and in some embodiments, forcing the gasket into chambers in the stator" (Pl.Ex. 96, Clark file wrapper p. 49).

of soft and resilient material. Nowhere does Clark indicate that he is using the word soft in connection with rubber to mean everything below the hardness of ebonite. In the absence of language to show special individual use of a term it seems a matter of common sense to take it in accordance with its ordinary meaning. The dictionary meaning of soft is given, among others, as "Easily yielding to physical pressure; not hard, firm, solid or compact enough or in comparison to other matter of objects of the same kind * * *". The dictionary meaning of resilient is "Leaping back; rebounding; recoiling; returning to or resuming the original position or shape". It may be granted that the terms "soft" and "hard" are not sharply defined in the rubber industry. There is no disposition on the part of the court to hold the defendant to the terminology employed by the witness O'Hare in describing the various degrees of hardness. But the testimony from several sources, including the defendant's witnesses, Fedder and Anderson, capped by the expert testimony of Mr. O'Hare, convinces the court that the gasket placed in the Clark valve, numbered exhibit 62 at the trial, was neither soft nor resilient in its composition at any time. Indeed the inference is strongly suggested that Mr. Clark, when he was working in the plant upon this valve, did not give very much thought to the nature of the gasket with regard to either softness or resiliency. He probably was thinking of a non-metallic surface that would not scratch as highly polished metal did, and whose surface would prevent the electro-chemical action which had caused sticking in these valves heretofore. Otherwise he would not have left the choice of the gasket to be determined by one of the shop men from whatever material was found about the place.

The defendant now argues that anything that can make a satisfactory gasket for the valve to operate conforms to the specification "soft and resilient". To that there are several answers. The first, and it alone suffices, has already been given in the discussion above dealing with the history of Clark's patent application. He cannot now ignore as an essential ingredient in his invention the very element which had been determined by the Examiner of Interferences to distinguish his patent over the prior art. Schriber-Schroth Co. v. Cleveland Trust Co. et al., supra; Smith v. Snow, supra. His reduction to practice must embrace that element. Akers v. Papst, supra.

It may be pointed out, in addition, that the testimony is in direct conflict as to whether the gasket inserted in Clark's exhibit 62 did operate satisfactorily. Mr. Daniels testified that he made experiments showing that the valve was highly unsatisfactory with such a gasket because it leaks badly and because it requires a pretty accurate degree of machining to get an even moderately satisfactory valve. There is evidence also that the Clark gasket was too hard to permit grit which results from the valve's operation, to become imbedded within it, with the result that the face of the rotor became scratched and required machination to the proper smoothness. It is a significant fact, in the court's opinion, that the Permutit Company, the assignees of Mr. Clark, uses in the commercial product which it sells to owners of water softeners a valve containing a gasket of 65 point hardness on the Shore scale.[2] The Daniels gasket is 58 point. Softness and resiliency in commercial use evidently mean what they say in common parlance whatever they may be argued to mean when found in a patent specification.

The court has in mind the decision of Morgan v. Daniels, 1894, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657, and there is no disposition to minimize the importance of the considered judgment of the experts responsible for the administration of the Patent Office. But Morgan v. Daniels clearly has no application to the conclusion reached here because the new testimony is overwhelmingly in support thereof and was not before the officials in the Patent Office who made the award from which this appeal is taken.

### Counts 1 and 2.

Counts 1 and 2 read as follows:

Count 1 (Daniels claim 32, Clark patent claim 6):

"1. In a plate type multiple port valve, comprising two members having multiple

---

[2] The fact that Permutit sells a lift-turn valve with a gasket of 85 point hardness is of little significance, since that valve does not have rings on one member which are to sink into the gasket.

ports, a resilient gasket between them and secured to the stationary member, the movable member having rings around its ports adapted to press into the resilient gasket to seal off one port from another, and means compelling the movable member to be lifted off its seat before it can be moved to another position."

Count 2 (Daniels claim 44, Clark patent claim 7):

"2. In a plate type valve, the combination of a ported body member, a fluid tight cover on the body member, a ported stem plate inside the cover and shiftable to different positions on the body member, one of the ports in the body member being a pressure port and certain other ports therein being arranged to communicate therewith in certain positions of the stem plate, the pressure port having communication with the inside of the cover, a gasket of resilient material disposed on the body member having ports in register with the ports in the body member, said stem plate having projecting seat portions surrounding the ports thereof and adapted to be impressed in the yielding material of the gasket for fluid tight seals and also hold the stem plate in spaced relation to the gasket while seated, and means for unseating and moving the stem plate to different positions relative to the body member."

 It is to be noted that in each of these counts a described feature is "a resilient gasket" or "a gasket of resilient material" or "yielding material of the gasket". The point of view indicated above in discussing counts 3, 4 and 5 necessarily controls counts 1 and 2. The court has found that the gasket mounted upon the valve, Clark Exhibit No. 62, is not soft and resilient and never was soft and resilient. A careful examination of the discussion of this point before the Examiner and the Board of Patent Appeals shows the officials there did not have the benefit of the convincing testimony to this effect which is now before the court. This point seems sufficient to uphold an award to the plaintiff on counts 1 and 2. It does not reject the other grounds urged by the plaintiff for this result, but makes it unnecessary to go into them.

 The action in this case was brought to determine the priority of the claims between the two parties. The case was submitted to the court upon the statement that the question here involved was one of priority, not invention. The argument of counsel both orally and through briefs and the very lengthy testimony are all addressed to the point of priority. The plaintiff asks from the court an order that a patent should issue to him. But neither evidence nor argument has been submitted directed to the question of invention rather than that of priority. The defendant, since he already has a patent and is urging here his priority is obviously not raising the question of invention. Yet presumably neither party would dispute the statement that "Patentability may not be established upon the mere agreement of parties, for it must be based upon invention, and that requirement cannot be overlooked by either the trial or the appellate court". Allbright-Nell Co. v. Autosteam Process Co., 7 Cir., 1934, 70 F.2d 959, 961. The court adjudicates the question of priority in favor of the plaintiff Daniels. No judgment upon the merits of the claim as invention can be made because, as pointed out, there is no basis for passing on it one way or the other.

The plaintiff may submit a decree for approval.