**RICHE v. PERMUTIT CO. et al.**

No. 1255.

District Court, D. Delaware.

Oct. 7, 1942.

Ira J. Wilson, of Chicago, Ill., Edward A. Morsbach, of Rockford, Ill., and Everett E. Borton, of Wilmington, Del., for complainant.

Alfred M. Houghton and James H. Littlehales, both of Washington, D. C., and Hugh M. Morris and Alexander L. Nichols, of Morris, Steel, Nichols & Arsht, all of Wilmington, Del., for defendants.

LEAHY, District Judge.

This is an action brought under R.S. § 4915, 35 U.S.C.A. § 63, to obtain an adjudication of priority of invention and a decree authorizing the Commissioner of Patents to issue letters patent to plaintiff upon his application Serial No. 708,589 filed on January 27, 1934. The corporate defendant is the assignee of Patent No. 1,931,-968, covering the invention in issue. The latter Patent issued on October 24, 1933, to defendants Sweeney and Clark upon application filed by them on March 3, 1930. In the Patent Office interference proceedings, defendants relied upon the filing date of the Sweeney-Clark application for conception and constructive reduction to practice, while plaintiff introduced direct evidence to show priority. The Examiner of Interferences awarded priority to Sweeney and Clark, and the Board of Appeals affirmed. Plaintiff instituted the present suit within the statutory six months period.

The invention in suit involves the combination of a hardness detector with an automatic water softener. Three distinct phases figure in the complete operation: (1) A water softener in which hard water is passed through certain chemicals; (2) a tester to determine whether the water is actually being softened; (3) the combination of these two functions whereby the chemicals which soften the water are automatically regenerated when they are exhausted.

The present suit—like the Interference proceedings in the Patent Office—is concerned solely with the third of these phases, the combination. Nevertheless, some discussion of the first two phases is necessary for a full understanding of the third.

The water softener itself contains a bed of chemicals through which the water flows from the supply source to service. The chemicals lose their activity and must be regenerated. This is accomplished by causing brine to flow through them for a suitable time; the excess brine is then rinsed out in order that no salt water will enter the service.

The tester operates by causing water which has gone through the softener to pass through a transparent testing cell where a sample is from time to time isolated. This isolation is accomplished by the closing of a valve operated by a motor. A pump, operated by the same motor, forces a reagent such as soap into the test cell where it is mixed with the sample of water to be tested. A switch is then closed which sets into operation a lamp, a photo-electric cell, an amplifying tube, a relay and an ammeter. Light from the lamp passes through the water sample on to the photo-electric cell. The current through the relay is inversely responsive to the amount of light received by the photo-electric cell and this in turn is governed by the color of the water in the testing cell. In short, there occurs an electrical measurement of the hardness of the sample of water.

Mechanical regeneration has long been known to the art. Some methods called for the attendance of an operator, others were controlled on the basis of volume of water passing through the softener. In the present invention the hardness detector, upon presence of hardness in the water, automatically shuts the valve to service, flushes the bed of chemicals in the softener with brine to revivify the chemicals, washes out the brine when the regeneration process is complete, and reopens the valve to service. The uniqueness of conception and improvement over the volume by meter method or attendant controlled type of water softener is that the time and sequence of the operations are automatically controlled.

Claims 1, 2, and 3 of both the Riche application and the Sweeney-Clark patent cover this invention.

As heretofore stated, defendants rely upon March 3, 1930, the date of ap-

plication by Sweeney and Clark, for conception and constructive reduction to practice. Since plaintiff's application is dated January 27, 1934, he must prove conception prior to March 3, 1930, and diligence in reduction to practice from a date prior to March 3, 1930.[1]

At the trial in the present proceedings, plaintiff introduced in evidence the file wrapper of the Patent Office proceedings and, in addition, certain "new evidence" which was not considered by the Patent Office tribunals and which, he claims, "supplies the link in the chain of evidence which the Patent Office officials thought was missing."

■ Since plaintiff's application was not filed until nearly four years after the Sweeney-Clark application, he is the junior party and therefore has the burden of proving priority of invention (conception and reduction to practice with due diligence) by a preponderance of the evidence. Smith v. Swaine, Cust. & Pat.App., 127 F.2d 140.

(1) Prior Conception. On this issue, plaintiff relies first upon his evidence before the Patent Office. Although I have carefully examined this evidence, I shall not pause to analyze it. I shall merely state that I agree with the Patent Office tribunals on the evidence they had before them when they decided that plaintiff's proofs failed "to prove conception of details as to how the two types of apparatus or subcombinations"—hardness detector and automatic softener—"might be connected to secure automatic operation."

The sole remaining question is, then, whether the "new evidence" supports plaintiff's burden of proof on the issue of prior conception. This evidence consists of a deposition taken about February 13, 1942, in which plaintiff's former attorney, one John E. Stryker, Jr., testified that plaintiff came to his office in the early part of June, 1929, and that they discussed at length whether they should add to the patent drawings an illustration of a water softener connected with the plaintiff's tester device.[2] Upon Mr. Stryker's advice, plaintiff concluded it was unnecessary to amend his drawings by showing a connection between the tester and the water softener because the attorney was of the opinion that the proposed connection "did not amount to invention"; and "the necessary revising and additions to the drawings, specifications and claims would have involved substantial further expense."

■ Plaintiff submitted in evidence as Exhibit 146 a drawing showing plaintiff's tester connected to a water softener covered by Lindsay Patent No. 1,704,982. This drawing would give me some concern except for the fact that it was recently made to illustrate the oral discussion between plaintiff and his attorney, which took place thirteen years ago. In Harper v. Zimmermann, D.C., 41 F.2d 261, 264, with respect to re-constructed drawings, Morris, J., said:

---

[1] In the Patent Office, Riche attempted to prove a constructive reduction to practice in application Serial No. 369,592, filed June 10, 1929. In ruling against him on this contention, the Examiner of Interferences stated: "At most the testimony shows that Riche only had the broad idea of the result desired but did not have a conception of the necessary means to produce that result. * * * Moreover, this testimony on behalf of Riche fails to show how the two alleged devices (tester and softener) were to be connected so as to operate in the desired manner." The Board of Appeals affirmed. After the District Court of the District of Columbia reached the same result in a suit against the Commissioner of Patents (Riche v. Coe, 34 F.Supp. 892), plaintiff abandoned this contention, accepted the issuance of Patent No. 2,253,049, covering the tester alone. He now relies on other proof of prior conception and on an actual reduction to practice.

[2] The attorney testified (Pl. Dep. p. 4): "The question came up as to whether it was necessary to do this, and I at that time withdrew from my file a copy of a patent that I had obtained for another client. That patent was the patent to Lynn G. Lindsay No. 1,704,982, granted March 12, 1929, for water softening apparatus. Mr. Riche explained to me that it would be a simple matter to connect his control to the circuit of the Lindsay patent to make the Lindsay apparatus entirely automatic in its operation. Lindsay's invention provides for a manual closing of a switch to institute the regenerating cycle of the water softening apparatus. Mr. Riche pointed out that it was only necessary to use his relay to close the Lindsay circuit in order to make the latter entirely automatic.

"Q. Did he explain to you in detail how he would do that? A. Yes. He pointed out that it was only necessary to run the circuit wires from his relay armature to the motor of the Lindsay device so that this motor would be started when the armature contacts were closed."

"The notebook sketch of 1917 was but a rough drawing. The reproductions of that lost sketch were made from memory and the oral testimony with respect thereto was given after the lapse of many years. While I do not question the belief of Harper, Aldrin, or Brown with respect to the accuracy of their recollection, I must not ignore the well-established fact that, other things being equal, memory fades with the lapse of time. The picture drawn from memory after the lapse of years is frequently colored all unconsciously by present knowledge."

When I view all of the "new" testimony given by plaintiff and his attorney thirteen years after the event, especially inasmuch as it was available to them at all times, and is now based on recollections of such old vintage, I conclude that it should be received cum grano salis. The fact is this evidence fails to show that plaintiff's tester and the Lindsay softener were even discussed as a combination as indicated in plaintiff's Exhibit 146. The attorney testified: "We had his drawing illustrated at the top of my drawing at that time, we had the drawings at the bottom of this page, and he merely indicated the connections shown in red by reference to those other drawings which were before us." Thus, it appears that plaintiff "merely indicated the connection" between the two devices, as the attorney had no recollection that plaintiff drew the lines on his drawing. An examination of plaintiff's subsequent activities further corroborates this view. From June, 1929, until March 3, 1930, we find him at no time making an actual connection of the two devices with actual circuit connections between the tester and a water softener. It was not until March 9, 1931— over a year after the Sweeney-Clark application was filed—that he actually embodied the combination. The evidence of what he did is to be given more weight than the testimony of what plaintiff and his attorney said he had in mind thirteen years ago. It is not that I disbelieve the plaintiff and his attorney. On the contrary, it is simply that the "picture drawn from memory after the lapse of years is frequently colored all unconsciously by present knowledge." This new evidence fails in character and amount

to "carry thorough conviction" that the Patent Office tribunals were in error. Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 38 L.Ed. 657.

(2) Diligence in reduction to practice. Having found that plaintiff has failed to sustain his burden of proving prior conception of the invention, I really need go no further. I shall nevertheless state that plaintiff's case falls for another reason. He has failed to show diligence in reduction of the invention to actual practice.

 Defendants admit that Riche did reduce the invention to practice in the home of O. W. Johnson on or about March 9, 1931.[3] But in so doing, he failed to use the diligence which is required by the cases. Martin v. Curtiss Aeroplane & Motor Co., D.C., 26 F.2d 701; Twentieth Century Machinery Co. v. Loew Mfg. Co., 6 Cir., 243 F. 373; Automatic Weighing Machine Co. v. Pneumatic Scale Corp., 1 Cir., 166 F. 288. Diligence must be established from a time before the opposing party enters the field. Brown v. Barton, 102 F.2d 193, 26 C.C.P.A., Patents, 889. And it calls for something more than simply keeping the patentable idea in a state of incubation. Cottrell v. Shafer, 97 F.2d 121, 25 C.C.P.A., Patents, 1171. The evidence of plaintiff's activities during the pertinent period shows that he was employed as a stocking salesman and devoted his evenings, Sundays, and holidays to the development of the tester. Throughout the period, he was engaged in experiments with and demonstrations of the tester. But there is no modicum of evidence that his attention was directed to the automatic combined operation of the tester with the softener. Proof that he was working on his tester is not proof of diligence in reducing to practice the conjoint automatic operation of both devices. The diligence upon which the plaintiff relies must be directed to a reduction to practice of the invention in issue. Interference Law and Practice, Revise and Caesar, Vol. I, p. 572; Lotterhand v. Hanson, 23 App.D. C. 372; Thompson v. Fawick, 64 F.2d 125, 20 C.C.P.A., Patents, 953. The apparatus to which the inventor directs his attention must include all of the elements in issue in order to establish a reduction to practice. Absent tests made with actual cir-

---

[3] I reject without discussion plaintiff's contention that he had earlier reduced the invention to practice. In all earlier models, regeneration was instituted by manual operation. During October, 1929, a model was completed with a stub shaft carrying a disc which indicated where the valves might be connected. But they were not so connected.

cuit connections between tester and water softener, I cannot find a reduction to practice. See Statement of Goodrich, J., in Daniels v. Permutit Co., D.C., 44 F.Supp. 74, 77 and Walker on Patents (Deller's Ed.) Vol. I, p. 385; O'Connell v. Schmidt, 27 App.D.C. 77. The principles involved in the combination are, I believe, sufficiently simple that, if Riche had diligently pursued his efforts to make it, he would have done so long before March, 1931.

I conclude that Sweeney and Clark are entitled to priority of invention.

Findings of fact and conclusions of law have been filed with this opinion in conformity with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The complaint should be dismissed.