**JACUZZI BROS., Inc. v. BERKELEY PUMP CO. et al.**

No. 27905.

United States District Court
N. D. California, S. D.

Feb. 23, 1950.

Charles O. Bruce, Nathan G. Gray, Berkeley, Cal., for plaintiff.

Mellin & Hanscom, Oscar A. Mollin, LeRoy Hanscom, Jack E. Hursh, San Francisco, Cal., for defendants.

GOODMAN, District Judge.

The evidence introduced at the trial of this patent infringement suit clearly established that some of the claims of the two patents assigned to the plaintiff, if they are valid, have been infringed by pumps which the defendant has manufactured and sold. The principal and most difficult issue to resolve is whether these claims are void for want of novelty or invention.

The two patents relate to centrifugal pumps, both with and without attached injector assemblies, and pumping systems of which such pumps and assemblies are a part. Both centrifugal pumps and injector assemblies are old in the art. The inventions claimed constitute improvements on the earlier pumps and pumping systems. A brief description of centrifugal pumps and injector assemblies and how they were employed in older pumping systems will aid in understanding the nature of the plaintiff's improvements.

Basically, a centrifugal pump consists of a disc-shaped impeller mounted on a motor-driven shaft within a casing. The shaft may be disposed either vertically or horizontally. Between the two discs forming the base and the top of the impeller and integrally connecting them are ribs curving outwardly from the center to the edge of the discs. When the impeller is in rotation, a suction is created which will draw the water from the well up a suction pipe into a chamber at the bottom of the casing and thence into the impeller, itself, through the eye at the center of its base. The water will be centrifugally discharged from the impeller radially through the passages defined by its ribs into a surrounding chamber. By virtue of the centrifugal force created by the rotation of the impeller, the water will have acquired a pressure higher than at intake. The amount of pressure thus obtained will depend upon the size of the impeller and its speed of rotation. If a single impeller is not capable of creating the desired pressure, the water may be directed through additional impellers. These impellers may be mounted on the same shaft in a series above the first impeller if the shaft is vertically disposed or along side the first impeller if the shaft is horizontally disposed. As the water emerges from each impeller it will be directed to the eye of the next impeller. The pressure of the water will be progressively increased at it passes through each impeller. From the last impeller the water will discharge into a chamber tapped by the service line.

Often the consumer will use water from the same source for different purposes, as for example, for irrigation and for household use. Each purpose may require a different water pressure. A separate pump may, of course, be used to supply the water at each pressure. But, a single pump capable of supplying water at different pressures would ordinarily be preferable. A single centrifugal pump can be made to discharge water at various pressures in at least two ways. The water being sucked from the well may be divided before it enters any of the impellers. A portion may be directed into one set of impellers, while the remainder is directed through another set of impellers which differ in size or in number from those of the first set. The water emerging from each set will be at a different pressure. Although both sets of impellers may be mounted on the same shaft, they will not be in series because none of the water will pass through both sets of impellers. Impellers arranged in this manner are said to be in parallel.

A multi-pressure centrifugal pump may also be constructed by mounting the impellers in series and bleeding off some of the water at one of the earlier impeller stages while permitting the remainder of the water to pass through all the impellers. With this arrangement, some of the impellers may be thought of as doing double duty, since all of the water will pass through the earlier impellers and only part of the water will pass through the last impellers. Since the plaintiff's patents relate to multi-pressure centrifugal pumps with the impellers arranged in series, it is with such pumps that the subsequent discussion will be concerned.

Multi-pressure centrifugal pumps of the type just described are old in the art. But of the specific models brought to the Court's attention, none were designed specifically to supply water at different pressures *simultaneously*. The discharge openings tapping the various impeller stages were equipped with control valves with the intention that only one would be open at a time.

In some of these models the impellers were mounted one above the other on a vertically disposed shaft; in others they were mounted side by side on a horizontally disposed shaft. While a *steady* simultaneous

multi-pressure discharge might have been obtained from the models with the vertical shaft, it could not be assured. In all of these models the discharge opening at the first impeller stage was lower than the eye of the second impeller. If the control valve at this discharge opening were open too wide in relation to the volume of water being sucked into the pump, all of the water would flow out this discharge and none of it would pass on through the upper impellers to the high-pressure discharge.

In one of the models having a horizontal shaft—the Ensslin model, United States patent number 1,494,595—the discharge openings were at the top of the casing immediately above each impeller stage tapped. It seems likely that a steady simultaneous discharge of water at several pressures could have been obtained from this pump. Barring some unusual internal pump structure, the eye of the second impeller by the force of gravity would necessarily be submerged in the water emerging from the first impeller before the water could flow out the discharge opening. However, the internal construction of this pump is not disclosed in the drawings, nor in detail in the specifications which state that the pump was designed to supply water at variant pressures alternately rather than simultaneously.

Centrifugal pumps are limited in their ability to raise water from a well, and in actual practice, are used to lift water a maximum of 20 to 25 feet. For deeper wells, an injector assembly is employed to boost the water from the well up the suction pipe to a point where the pump can lift it the rest of the way. When an injector assembly is part of the pumping system, a portion of the water discharged from the centrifugal pump will be directed down a pressure pipe back into the well. The pressure pipe may be either concentric with or parallel with the suction pipe, but it will lead into the suction pipe through a nozzle. The water being forced through the nozzle at a high pressure will create a suction and draw water from the well with it up the suction pipe to a point where the suction created by the pump will be effective to draw the water into the pump.

The centrifugal pump itself operates in the same manner with or without a injector assembly attached. But special difficulties are presented in supplying a multi-pressure discharge from a centrifugal pump with an injector assembly attached. The injector assembly requires a certain minimum volume and pressure of water for continued operation. Therefore if too much of the water is permitted to flow from a discharge opening tapping one of the earlier impeller stages of the pump unit, insufficient water will pass through the pump to supply the injector assembly. When there is no injector assembly in the system, if an excessive volume of water flows out the low pressure discharge, the result will be merely the starving of the high pressure discharge for water. But with an injector assembly in the system, the result will be the stalling of the entire system.

Furthermore when an injector assembly is part of the system a similar problem is presented even though only a single discharge to service is desired. Some means must be provided to divide the water between the service line and the pressure line leading to the injector so as to assure the injector of an ample supply of water. If the single service line is supplied from an early impeller and the injector from the last impeller, the problem presented is the identical one of dividing the water between the service line discharge opening and the eye of the succeeding impeller. If both the service line and the pressure line to the injector are supplied from the last impeller stage, the problem of division is somewhat different, but present, nevertheless.

The prior art discloses systems in which various means were employed to attempt to solve these problems. United States patent number 2,150,799 to Frank Jacuzzi describes a system with a single discharge to service, the service line and the injector both being supplied from the last impeller stage. A control valve at the service line opening regulates the volume and pressure of the stream of water supplying the injector.

A system with a dual discharge to service is depicted in United States patent number 1,758,400 to Rachelle Jacuzzi. Both the high-pressure service line and the injector are supplied from the last or single impeller stage of the pump. There is a control valve at the high-pressure discharge opening to regulate the amount of water flowing out of it. The suction line leading from the well to the pump intake is tapped for the low pressure discharge to service. It is not possible to tap the suction line when a centrifugal pump alone must draw the water from the well, because the pump would suck in air through the opening in the line. But, when an injector assembly is forcing water up the suction line, the line may be tapped at a point below where the suction from the pump unit takes effect. A control valve and also a pipe elbow with its vertical portion extending up higher than the pump intake are employed at this suction line opening to prevent all the water from being drained out of the low-pressure discharge. Tapping the suction line is not the perfect means of providing a low-pressure discharge. This is so because the control valve must be properly set and periodically adjusted to assure that sufficient water will pass by the opening and be drawn into the pump to supply the injector assembly. And, the testimony indicated that a suction line discharge is fraught with other difficulties.

In the Italian patent number 139,161 to Veronesi and the German patent number 376,684 to Speck the single service line and the injector are supplied from different sets of impellers in parallel on a single shaft. The extra number of impellers required for this arrangement should make it less desirable, however, than a system in which the pump impellers are in series.

In the model described in the British patent number 382,592 to Schmid the water is discharged from the first impeller into a pressure tank. Water at low-pressure is drawn off at the top of this tank for consumer use and a second impeller which feeds only the injector is supplied with water through an opening at the bottom of the tank. Thus a supply of water to the injector is assured.

In the Italian patent to Veronesi number 260,417 a centrifugal pump with a horizontal shaft is pictured. The injector assembly is supplied from the last impeller stage. At the top of the casing, immediately above the the first impeller stage is a discharge opening. The drawing does not picture a passage-way leading to this opening from the chamber surrounding the first impeller. But an arrow depicting the flow of water is drawn from this chamber to the opening, thus indicating that the passage-way is there. In this pump, as in the Ensslin model previously described, the force of gravity would accomplish the division of the water between the low pressure discharge and the succeeding impellers by favoring the impellers. The eye of the second impeller being lower than the discharge opening will be submerged before the water will flow from the opening. The plaintiff earnestly urges that the structure described is not sufficiently disclosed because the draftsman indicated the passage-way merely by the flow arrow and not by dotted lines as is the orthodox engineering practice. This question will be considered later.

This in brief was the state of the prior art as presented to the Court by the parties. The plaintiff's two patents in general relate to systems in which water at various pressures can be obtained simultaneously from a single centrifugal pump for consumer use and to operate an injector assembly. The impellers of the pump unit are in series and various impeller stages are tapped to secure the water at different pressures.

Of the claims of Patent No. 2,424,285, some merely describe a pump unit with a multi-pressure discharge for consumer use. Others relate to a system in which an early impeller stage of the pump unit is tapped for a low-pressure service line, and the final impeller stage supplies an injector and a high-pressure service line. The feature of plaintiff's pump and system which represents the real improvement over prior pumps and systems is the means of positively dividing the water between each discharge opening at an early impeller stage and the succeeding impellers which feed

the high-pressure service lines or an injector or both.

Plaintiff divides the water in the following manner: In the side walls of the chamber surrounding each impeller are a number of port holes. As the impeller rotates a similar stream of water will be forced through each one of these ports. The water is discharged through these ports into passage-ways leading up over the top wall of the impeller chamber to the eye of the second impeller. If the impeller stage is tapped by a discharge opening, the passage-ways are constructed so that those from a few of the ports will lead not to the eye of the second impeller but to the discharge opening. This means of division does not merely favor the second impeller eye. It positively divides the water between the impeller eye and the discharge opening so that *both* are always assured of a supply of water.

The water from the last impeller stage of plaintiff's pump discharges into a small chamber. If both an injector and a high-pressure service line are to be supplied from the last impeller stage, some means must be provided to divide the water between them. It would seem that plaintiff might have effected this division in the same manner as he previously divided the water between the low-pressure discharge opening and the eye of the succeeding impeller. However, plaintiff chose to place a control valve at the opening to the high-pressure line to control the flow of water.

Then plaintiff apparently conceived the idea that if only the injector were supplied from the last impeller stage, and a previous impeller stage were tapped for the high-pressure discharge, this control valve could be eliminated. This arrangement also has another advantage. If a well is very deep the pressure required to operate the injector may be much greater than would be required for any purpose of the consumer. Thus if the water for consumer use is drawn off at an early impeller stage, the consumer is saved the expense of raising all the water to the pressure required by the injector. The idea of isolating the injector so that it alone is supplied from the last impeller stage is the subject of plaintiff's second patent number 2,344,958. The claims of the two patents fail to express clearly the line of division between them, and one must resort to the specifications to determine it. Broadly speaking patent number 2,424,285 is intended to cover the concept of obtaining a simultaneous multi-pressure discharge from a centrifugal pump with its impellers in series, and of obtaining the simultaneous discharge, without danger of stalling the attached injector assembly. Patent number 2,344,958 is intended to cover the concept of providing the service discharge from an impeller stage other than that from which the injector is supplied.

The defendant's pumping systems are designed to accomplish these same purposes, and are substantially the same as the plaintiff's except for the means employed to divide the water between the low pressure discharge opening and the eye of the succeeding impeller. Plaintiff employs the system of ports and passages to positively divide the water between the discharge opening and the eye. Defendant applies the force of gravity to favor the eye of the impeller over the discharge opening. It has been previously explained that in pumps with a horizontal shaft, the force of gravity would necessarily keep the eye of the second impeller submerged although water is running out the discharge opening tapping the first impeller stage. The defendant had adapted a pump with a vertical shaft to utilize the force of gravity for this purpose. In defendant's two-impeller model the first impeller stage is so constructed that the water discharges into a chamber which extends up past and higher than the second impeller. The low-pressure discharge opening is in the wall of this chamber at its highest point. The second impeller is reversed so that its eye faces upward rather than downward, and will always be submerged by the water in the chamber before the water reaches the height of the discharge opening. In the defendant's three stage model, the chamber extends up past and higher than both the second and third impellers. The eyes of both of these impellers face upward. The chamber is

tapped at its highest point for the low-pressure discharge. The eye of the top impeller is submerged by the water in the chamber. The top impeller may be tapped for a second discharge to service although it feeds directly into the middle impeller below it. The middle impeller stage which will be the stage of highest pressure supplies the injector.

It is clear that the defendant's systems infringe those of the plaintiff unless the precise means of dividing the water between the discharge opening and the impeller eye is made an essential element of plaintiff's claims. Plaintiff's system of ports and passages is an essential element in some of his claims. Other of his claims, however, are not so limited. These claims, plaintiff alleges, have been infringed and they clearly have been.

■ Considering plaintiff's systems as a whole it is apparent that they are both useful and novel. No prior systems are substantially identical with plaintiff's systems. But each claim alleged to have been infringed must separately meet the tests for novelty as well as invention,[1] although of course each may be construed in relation to the others [2] and the specifications.[3]

The nine claims of the second patent No. 2,344,958, with the exception of claim 3 which is not alleged to have been infringed, vary only in details not germane to the question of invention. They may therefore be considered as a unit. All of them describe a system in which a pump unit with its impellers in series is tapped at an early impeller stage to feed a service line and at

a subsequent impeller stage of higher pressure to feed an injector assembly. Some of them specify that the discharge passage to the service line is valve free and others do not.

■ Consideration of the prior art previously described makes it apparent that there can be no invention disclosed in claims so broad as these.[4] The system described is the precise system pictured in the drawings of the Italian patent number 260,417 to Hugo Veronesi. The question posed by the plaintiff as to whether the Veronesi drawing makes it sufficiently clear that the first impeller stage is tapped by the discharge opening must be answered in the affirmative. The defendant introduced the deposition of Davide Veronesi, Hugo's son, to show that the drawing was intended to picture a pump with the service line and the injector supplied from different stages, and also that such pumps were manufactured and sold in Italy. This testimony of course is immaterial, since the plaintiff is bound by nothing not disclosed on the face of the patent. R.S. § 4923, 35 U.S.C.A. § 72. The defendant also introduced certain Italian catalogues distributed by Hugo and Davide Veronesi which picture and describe their pumps. Although these catalogues constitute a printed publication of a type which would bind the plaintiff, they do not picture the internal structure of the pumps illustrated. Since no translation of their descriptive passages was furnished the Court, they can be disregarded.

Admittedly there are no dotted lines in the Veronesi patent drawing showing a

1. Continental Paper Bag Company v. Eastern Paper Bag Company, 1908, 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122; In re Garratt, 1933, 63 F.2d 113, 114, 20 C.C.Pa., Patents, 878; 2 Walker On Patents 770 and 1231 (Deller's Edition 1937).

2. In re Arendt, 1935, 74 F.2d 765, 768, 22 C.C.P.A., Patents, 885.

3. Carnegie Steel Company v. Cambria Iron Company, 1902, 185 U.S. 403, 432, 22 S.Ct. 698, 46 L.Ed. 968; Howe Machine Company v. National Needle Company, 1890, 134 U.S. 388, 394, 10 S.Ct. 570, 33 L.Ed. 963; Greenawalt v. American Smelting & Refining Co., 9 Cir., 1926, 10 F.2d 98; 2 Walker On Patents 1242 (Deller's Edition 1937).

4. For a discussion of the considerations which mitigate against a finding of invention where claims are too broad see O'Reilly v. Morse, 1853, 15 How. 61, 112, 56 U.S. 61, 112, 14 L.Ed. 601. See also Edison v. American Mutoscope Co., 2 Cir., 1902, 114 F. 926, 934; Bracewell v. Passaic Print Works, C.C.S.D.N.Y.1901, 107 F. 467, 473; Auto Hone Co., Inc., v. Hall Cylinder Hone Co., D.C.N.D.Ohio 1924, 3 F.2d 479, 482.

passage through the pump casing from the chamber surrounding the first impeller to the discharge opening. But, the only reasonable purpose of the flow arrow drawn from the impeller chamber to the opening would be to indicate that the passage is there. Although dotted lines may be the standard method of indicating such passageways, they are not always so used. This is significantly demonstrated by the drawings in plaintiff's own patents. Plaintiff has failed to indicate at least one obvious passageway in his drawings either by dotted lines or a flow arrow. But, plaintiff contends that a passage from the first impeller chamber to the discharge opening in the Veronesi pump is negatived by certain statements in the specifications. This same argument was advanced when this patent was cited as a reference in the patent office and apparently was accepted by the examiner. These statements are to the effect that water issuing from the exhaust of the pump is divided into two portions, one portion being directed to the place of utilization and the other to the injector. The flaw in this argument is that the patent is not directed to the pump unit at all, but rather to the injector. The inventor states that the injector "is not operated by a special pump, but operates with any suitable type of pump." The statements in the specifications were intended to refer to pump units in general and not to the particular pump which the inventor chose to attach to the injector in the drawings.

However, since the invention claimed in this patent was the injector, there is nothing in the patent to indicate the significance of a discharge passage from an early impeller stage of the pump unit and the isolation of the injector at the last impeller stage. For this reason, perhaps, the drawing should not in itself be considered a complete anticipation of plaintiff's system. But this drawing when considered in connection with such other prior art as the system described in the Schmid patent clearly points the way to such a system as claimed in plaintiff's patent No. 2,344,958. In the Schmid model the first impeller did not feed directly into the second, but indirectly through a pressure tank. But, the basic idea of feeding the discharge line from one impeller and the injector from a succeeding impeller was embodied in this model. The Veronesi drawing showed how it might be accomplished without the intervening pressure tank. Furthermore, disregarding the absence of control valves, plaintiff's system would be duplicated merely by connecting an injector to one of the discharge connections of the old multi-discharge centrifugal pumps. Merely removing the control valves accomplishes nothing in itself. The control valves are made unnecessary only because of plaintiff's means of dividing the water between the discharge opening and the succeeding impeller eye. It must be concluded that the claims 1, 2, 4, 5, 6, 7, 8, and 9 of the patent number 2,344,958 are invalid for want of invention.

The claims of patent 2,424,285 which plaintiff alleges to have been infringed are 3, 9–14, 17, and 18. Claim 13 in substance is identical with those claims in patent 2,344,958 which do not specify that the discharge opening to service is valve free. Claims 9 and 10 are the same as claim 13 except that instead of stating merely that each impeller stage of the pump feeds into the succeeding stage they emphasize that each stage feeds "directly" into the succeeding stage. There is no invention in the direct feed. Such a feed is found in many of the prior multi-pressure centrifugal pumps. One would have only to connect an injector to those pumps to have the system described in these claims.

Claim 11 relates to a system in which two pumps are employed. The water from the low-pressure pump is discharged into a chamber having an outlet to service and also an outlet to the high-pressure pump which supplies the injector. This system is fully anticipated by the British patent to Schmid, number 383,592. This patent was cited as a reference by the patent examiner. But the file wrapper shows that claim 11 was not in the original application but was added later as a prelude to an interference proceeding and thus the Schmid patent was apparently never considered in relation to this claim. This claim, however, is not infringed by the defendant's systems. There is a significant difference between

systems employing only one pump and those employing two.

Claim 12 describes a system consisting of an injector assembly; a pump with its impeller stages adjacently disposed on a common shaft and feeding one into the other in series, and with a discharge outlet at one of these stages; and "means for delivering to said discharge outlet, fluid at one pressure; and means for delivering fluid to said nozzle at a pressure in excess of that at said discharge outlet." This system could be duplicated by attaching an injector to one of the multi-discharge pumps with control valves. It is also pictured in the Veronesi drawing.

Claim 14 describes a pump with its impeller stages in series, having a discharge passage leading from the last stage, another discharge passage leading from an intermediate stage, a valve means in at least one of said discharge passages for limiting the minimum pressure of flow there through—and a by-pass passage directed downwardly from a stage in said series, above the intermediate stage. Disregarding this by-pass passage, which is certainly not an inventive difference, this claim is descriptive of any of the early centrifugal pumps with dual discharge outlets.

Claim 3 describes a system having a pump unit with its impeller stages in series; a discharge passage leading from an early stage of the pump unit; a discharge passage leading from a subsequent stage of said pump unit; a by-pass passage directed downwardly from a state of high pressure in said series and connected to an injector assembly. In substance this claim is identical with claim 14 except that it specifies that an injector assembly is to be connected with the by-pass passage. As previously indicated, there is no invention in connecting an injector assembly to a pump unit no different from prior pump units.

The short answer to the question of validity is that plaintiff in all of these claims has attempted to include virtually every possible system in which a multi-pressure discharge is supplied from a pump with an injector attached. The state of the prior art is such that plaintiff is not entitled to such a monopoly. The new and significant feature of plaintiff's systems is the means of positively dividing the water between a discharge outlet tapping an impeller stage and the eye of the succeeding impeller. Those claims directed specifically to this means have not been alleged to have been infringed and their validity need not be determined. It might be noted, however, that even this means of division is not entirely new. The system of ports and passages for directing water from an impeller chamber to the eye of the succeeding impeller was described and claimed in the United States patent to Frank Jacuzzi, Number 2,150,799. All plaintiff did was to adapt this system of ports and passages to a dual discharge pump by reconstructing some of the passages to direct the water to the discharge opening rather than to the eye of the succeeding impeller.

Claims 17 and 18 describe a system in which a dual-discharge pump is connected so that one discharge feeds into a pressure tank. There is free communication between the pressure tank and the low-pressure discharge line so that pressure equalization will occur throughout the system during quiescent periods. Thus, if water is drawn from the low pressure line, when the pressure falls below a certain value, an automatic pressure switch will start the pump. Plaintiff seems to assume that by adding a pressure tank and switch to his multi-pressure centrifugal pump, he achieves a distinct invention. This assumption is fallacious. Pressure tanks and switches are, of course, old in the art. If the high-pressure discharge of one of the old multi-pressure centrifugal pumps were connected to a pressure tank and switch and the low-pressure discharge control valve left partially open, the pump would automatically start when sufficient water was drawn off through the low-pressure line. Plaintiff devised a means of positively dividing the water between the discharge outlet and succeeding impeller stages, and still maintained the open communication throughout the system necessary for pressure equalization. But free communication throughout a multi-pressure

discharge system is not unique with plaintiff's system and is not a separate invention.

Claims 3, 9, 10, 12, 13, 14, 17, and 18 of patent number 2,424,285 have been infringed, but for the reasons stated are void for want of invention. Claim 11 has not been infringed, but is void for want of novelty.

Judgment accordingly.[5]

---

5. What has been stated, in my opinion, sufficiently sets forth findings of fact and conclusions of Law. It is so intended. However, if counsel wish to present findings in a separate document, they may do so, provided they are confined to the considerations upon which the decision rests.