John W. RYAN, Plaintiff,

v.

IDEAL TOY CORPORATION, Defendant.

Civ. A. No. 66–1351.

United States District Court
Central District, California.

Sept. 26, 1966.

Herzig, Walsh & Blackham, Beverly Hills, Cal., for plaintiff.

Kendrick, Subkow & Stolzy, Los Angeles, Cal., for defendant.

## MEMORANDUM

HALL, District Judge.

The plaintiff sues the defendant for infringement of letters patent 3,267,607 and 3,267,608, and, upon hearing on Order to Show Cause duly issued and noticed, seeks an injunction *pendente lite*. The patents were issued on August 23, 1966, and the within suit was immediately filed on that date in this Court.

35 U.S.C. § 282 creates a presumption of validity and requires that the person attempting to attack the validity of the patent shall have the burden of proving such invalidity. The section is in the following language:

"35 U.S.C. § 282. *Presumption of validity; defenses*

"A patent shall be presumed valid. Each claim of a patent (whether an independent or dependent form) shall be presumed valid independently of the validity of other claims; dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it. As amended July 24, 1965, Pub.L. 89–83, § 10, 79 Stat. 261."

35 U.S.C. § 283 permits the courts having jurisdiction to grant injunctions "in accordance with the principles of equity," in the following language:

"35 U.S.C. § 283. *Injunction*

"The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable. July 19, 1952, c. 950, § 1, 66 Stat. 812."

The plaintiff relies on the presumption of validity, the inapplicability of the Powleson expired patent, and a showing of great, irreparable, and immediate damage and deliberate acts of defendant to destroy plaintiff's patent rights.

Among other grounds of opposition, the defendant claims that the plaintiff Ryan has no standing to sue as he is not the owner of the patent inasmuch as from the face of the patent it shows that Ryan assigned it to Mattel, Inc., of Hawthorne.

This ground is not well taken as there was a reassignment back to the plaintiff on the day the suit was filed.

The other grounds of defendant's opposition stem largely from Ninth Circuit cases, one of which is Jacuzzi Bros. v. Berkeley Pump Co. (1951), 191 F.2d

632, 634; the quotation therefrom is as follows:

"The presumption of validity of administrative grant has been in recent years almost reduced to nullity in patent cases."

The statement in that case is wholly and purely dicta. The case was tried on the merits [see D.C., 90 F.Supp. 238], and the patent found invalid, which was affirmed on appeal.

Other cases in the Ninth Circuit have statements much to the same effect.[1]

These statements seem to me to be contrary to the pronouncements of the Supreme Court in Radio Corp. of America v. Radio Engineering Labs. (1934), 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163, and Mumm v. Jacob E. Decker & Sons (1937), 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983. In the *Radio Corp.* case the Supreme Court said as follows concerning the presumption of validity:

"A patent regularly issued, and even more obviously a patent issued after a hearing of all the rival claimants, is presumed to be valid until the presumption has been overcome by convincing evidence of error. The force of that presumption has found varying expression in this and other courts. Sometimes it is said that in a suit for infringement, when the defense is a prior invention, 'the burden of proof to make good this defense' is 'upon the party setting it up,' and 'every reasonable doubt should be resolved against him.' Cantrell v. Wallick, 117 U.S. 689, 695, 696 [6 S.Ct. 970, 29 L.Ed. 1017]; Coffin v. Ogden, 18 Wall. 120, 124, [21 L.Ed. 821]; The Barbed Wire Patent, 143 U.S. 275, 285 [12 S.Ct. 443, 447, 36 L.Ed. 154]; Washburn v. Gould, [Fed.Cas.No. 17,-214] 3 Story 122, 142; H. J. Heinz Co. v. Cohn [9 Cir.] 207 F. 547, 554; Detroit Motor Appliance Co. v. Burke, [8 Cir.] 4 F.(2d) 118, 122; Wilson & Willard Mfg. Co. v. Bole, [9 Cir.]

227 F. 607, 609; Stoody Co. v. Mills Alloys, Inc., [9 Cir.] 67 F.(2d) 807, 809; cf. Morgan v. Daniels, supra, [153 U.S. 120] p. 123, [14 S.Ct. 772, 38 L.Ed. 657]. Again it is said that 'the presumption of the validity of the patent is such that the defense of invention by another must be established by the clearest proof—perhaps beyond reasonable doubt.' Austin Machinery Co. v. Buckeye Traction Ditcher Co., [6 Cir.] 13 F.(2d) 697, 700. The context suggests that in these and like phrases the courts were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and suggestion to guide the course of judgment. Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance. Cf. Philippine Sugar E. D. Co. v. [Government of] Philippine Islands, 247 U.S. 385, 391 [38 S.Ct. 513, 62 L.Ed. 1177]."

Much the same thought was reiterated in the *Mumm* case, supra, where, at page 171, 57 S.Ct. at page 676, the court said as follows:

" 'For the grant of letters patent is *prima facie* evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486 [23 L.Ed. 952]; Lehnbeuter v. Holthaus, 105 U.S. 94 [26 L.Ed. 939].' The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it. Walker on Patents, § 116. Not only is the burden to make

---

1. See: Hycon Mfg. Co. v. H. Koch & Sons (1955), 219 F.2d 353, 357; Pressteel Co. v. Halo Lighting Products, Inc., (1963), 314 F.2d 695–697; Jaybee Mfg. Corp. v. Ajax Hardware Mfg. Corp. (1961), 287 F.2d 228–229.

good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that 'every reasonable doubt should be resolved against him.' Id., Cantrell v. Wallick, supra; Coffin v. Ogden, 18 Wall. 120, 124 [21 L.Ed. 821]; The Barbed Wire Patent, 143 U.S. 275, 284, 285 [12 S.Ct. 443, 36 L.Ed. 154]; Adamson v. Gilliland, 242 U.S. 350, 353 [37 S.Ct. 169, 61 L.Ed. 356]."

Several United States Courts of Appeal have stated that the presumption is *weakened* if there is an applicable prior art not considered by the Patent Office. The Ninth Circuit has gone further and said it is *"dissipated."* But in the same case the court said only that such prior art *"may overthrow* that *presumption."* But Holstensson v. V-M Corp. (6 Cir. 1963), 325 F.2d 109, cert. den. 377 U.S. 966, 84 S.Ct. 1646, 12 L.Ed.2d 736, and Devex Corp. v. General Motors Corp. (7 Cir. 1963), 321 F.2d 234, cert. den. 375 U.S. 971, 84 S.Ct. 490, 11 L.Ed.2d 418, do not go that far. Nor has the Supreme Court yet made any statement to that effect, that the presumption was dissipated or destroyed, so far as the author of this opinion can ascertain. The proposition that the presumption is *weakened* if pertinent prior art has not been drawn to the attention of the Patent Office is logical. This does not mean that the presumption is *destroyed.* It is inconceivable that "every reasonable doubt should be resolved" against the person attacking the patent, as stated in *Radio Corp.* and the *Mumm* cases, and at the same time, that the presumption of validity is destroyed because one patent was not called to the attention of the Patent Office.

■ I feel obliged, therefore, to apply the principles announced by the Supreme Court in the *Radio Corp.* and the *Mumm* cases above mentioned, with the addition that the presumption of validity is weakened if there is applicable prior art not considered by the Patent Office.

■ Before going further, of course, it must be conceded that preliminary injunctions are extraordinary remedies and are granted only in unusual circumstances.

To hold such presumption is destroyed in its most literal sense would be not only to negate Sections 282 and 283 of Title 35, but would also make a patent almost a worthless piece of paper against a rich and powerful competitor who would seize upon the disclosure to immediately produce the product and flood the market while the patentee stood haplessly by contemplating what value his patent might be other than giving him a right to begin expensive, extensive and seemingly endless litigation only to perhaps secure an injunction in the end when there would be little market left for the production of the thing patented, and a judgment for money, which experience has shown is not worth much against a predator.

The defendants also rely upon the proposition stated in Pacific Cage and Screen Co. v. Continental Cage Corp. (9 Cir., 1958), 259 F.2d 87, at 88, as follows:

"Generally speaking, no preliminary injunction will be granted unless the patent is valid and infringed beyond question and the record conclusively proves the defense is sham."

The statement in the *Pacific Cage and Screen Co.* case, supra, is purely dicta as that case was dismissed solely because no record was ever perfected on appeal and there were no findings of fact before the appellate court.

Moreover, the first portion of the above statement seems to me to be in direct contradiction of the declarations by the Supreme Court in the *Radio Corp.* case and the *Mumm* case, and I feel obliged to follow the latter two cases.

■ Validity, of course, has not been adjudicated in this case and the court cannot upon the motion for preliminary injunction go so far as to hold a patent valid and infringed "beyond question," but, under the general principles of equity and under the *Radio Corp.* case and the *Mumm* case, the court deems

it only necessary in the granting of a preliminary injunction to ascertain if there is a strong probability that the patent is valid *and* infringed; and the court must, of course, before it can grant a preliminary injunction, determine that irreparable injury will occur to the plaintiff unless the injunction is granted.

There is a statement in the *Pacific Cage* case to the effect that if validity has been adjudicated and there is shown to be acquiescence therein and irreparable injury is proved, the matter of a preliminary injunction is generally in the discretion of the trial court, for which reliance is had upon Ross Whitney Corp. v. Smith et al. (9 Cir., 1953), 207 F.2d 190.

But the *Ross Whitney* case involved trademark infringement and *unfair* competition, and a preliminary injunction was granted and was sustained.

Since Sears Roebuck & Co. v. Stiffel Co. (1964), 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, and Compco Corp. v. Day-Brite Lighting, Inc. (1964), 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, place a patentee's sole right to recovery upon his patent and not upon the basis of unfair competition, it would seem that the statutory presumptions of 35 U.S.C. § 282 are strengthened.

In this case there was no time for public acquiescence in the validity of the plaintiff's patent because the suit was filed on the day the patent was issued, and defendant, having heard about the plaintiff's device a year before, immediately set about to manufacture and sell a competing doll. So we have a situation where plaintiff was confronted with an admittedly deliberate effort to capture the market for the product covered by plaintiff's patent.

The defendant's complaint that there was no industry acceptance of the patent is to be taken rather lightly, as to this defendant, in view of the fact that by the testimony of defendant's chief executive officer and its chief engineer they claim that their product was not made upon the patent in suit but was a combination of elements disclosed by the expired British *Lines* patent and the expired United States *Powleson* patent—and defendant is seeking a patent for its walking doll. In other words, by their position they have accepted the plaintiff's patent as valid but say they are trying to get around it.

The question now arises as to just how far the Powleson patent, that is, the expired Powleson patent, No. 1,986,446, *weakens* the presumption of validity of the plaintiff's patent. It is true that the Powleson patent is not cited as a prior art reference, but an examination of the Powleson patent indicates that while it sought to produce a walking figure, the principal object of the invention lay in what appears from the specifications of the patent to be in the *foot device*, or as they call it, a "*tread member*." Moreover, the defendant can hardly be heard to say that the Powleson device, at least on the hearing of the temporary restraining order, completely destroys the plaintiff's presumption of validity because the defendant itself in the testimony quoted in the affidavits claims that it is not making a doll following the expired Powleson patent. I conclude that the failure of the Patent Office to cite the Powleson patent does not sufficiently weaken the presumption of validity so as to require this court to disregard that presumption of validity.

The plaintiff's product was put in as an exhibit as was the finished product of the defendant. It is true that the inner workings and mechanisms are somewhat different, but they are sufficiently similar as to come within the doctrine of equivalents, which doctrine is now so well known that it need not be expounded upon at this time.

The defendants also assert that the plaintiff's doll is merely the adoption of mechanical skill to the prior art disclosures of Powleson and Lines. I cannot so find, but find to the contrary on the evidence now before the court in view of the plaintiff's long and expensive record of experiments of trial and error and from the examination of the product itself and of the terms of the patents.

The conduct of the defendants in this case is of special significance to a court of conscience. From the affidavits in the case it is shown, without contradiction, that in the course of the development of the patents in suit more than $600,000 had been expended on research and design and labor and material in the development of the patent, and that prior to January 31, 1966 approximately $600,000 had been spent for advertising the product. It is, moreover, shown by the affidavits quoting the testimony of the chief executive officer and the chief engineer of the defendant that neither of them had *ever given* any consideration to the manufacture of a walking doll, which is the product of plaintiff's patents, until the Toy Fair of 1965 at which time the defendant was told by buyers of dolls that Mattel (the plaintiff's manufacturer) was making and selling a doll that walked electrically, without mechanical support, and was asked by the buyers, "What are we going to do about the Mattel doll, and so on, and that the Mattel doll probably looked like it might be successful; and we felt that it was a good action for a doll, and felt that we should go into it, also."

He further testified that he had never seen a walking doll before he saw the Mattel doll but that he put his engineers to work either at or about the time of the Toy Fair in 1965 after the Mattel doll had been described to him in many manners and that their decision to go into the manufacture of it was "almost immediate upon the announcement that it was being made," and that because it was self powered "that was what distinguished it from dolls which Ideal (the defendant) had made many times," and that they had theretofore never undertaken to make, in the research and development sense, a walking, self-powered doll either mechanically or electro-mechanically powered.

He further testified that "Sometimes protection (a patent) is not important; being firstest with the mostest might be more important; * * * Getting pro-tection sometimes is not important. You can make a success without it."

The chief engineer of the defendant testified, among other things, as follows:

"Q. What do you think of patents?

A. Not much.

Q. Why do you say that?

A. Well, I don't think I ever saw a patent yet that I couldn't design it a different way and get the same result."

The evidence shows that the average life of a toy, or perhaps better stated, the peak life of a toy is about two years.

The evidence shows that immediately after the Toy Fair of 1965 the defendant, upon hearing of the manufacture and marketing of the plaintiff's walking doll, went into the manufacture of and an advertising and sales campaign for a walking doll which their engineering department designed. They now claim that it would be unjust and contrary to equitable principles to issue temporary injunction because they have expended or committed money in the sum of approximately a half million dollars in advertising their walking doll.

The statement of defendant's president that "being firstest with the mostest," is of a special significance because, without contradiction, the evidence shows that the peak of the doll selling season is September through December. Thus, in view of the short life of new dolls which are put on the market and the imminence of the "cream of the crop" season now here, the greatest damage could now and in the next few months be done to the plaintiff by the defendant.

In view of the shortness of the market season and the marketable life of dolls, that damage appears to me to threaten to be so great as to be well nigh irreparable.

Before the *Compco* and *Sears and Roebuck* cases, supra, it was common practice to join a cause of action for unfair competition with a suit for infringement, where plaintiff claimed facts as shown by the record here. In line with the doctrine of those cases and the Act of

Congress set forth in 35 U.S.C. § 283 that injunctions may be granted "in accordance with the principles of equity," to refuse an injunction *pendente lite* in this case, it seems to me would straight-jacket the very fundamental principle of equity, that it exists because the law by reason of its universality is deficient.[2]

The foregoing Memorandum is not to be taken as including all the facts shown by the affidavits and record which entitle the plaintiff to an injunction *pendente lite,* but will be sufficient to guide the plaintiff in drawing findings of fact, conclusions of law and an order for an injunction *pendente lite,* which is hereby ordered granted.

The defendant claims that it is a large manufacturer and that, if the plaintiff's patent is valid, plaintiff can be satisfied in damages.

The company has a place of doing business in California but apparently its principal manufacturing plant and its principal assets are in New York state. If plaintiff recovered, it would be compelled to pursue its remedy there by execution. Thus it appears to the court to be equitable and just that a bond be required in this case.

Under the law the court can require either the plaintiff or the defendant in such an instance to put up a bond.

"A trial court has undoubted power to require a bond, either from plaintiff as condition of granting a preliminary injunction, or from a defendant in lieu of such injunction." To-ledo Plate & Window Glass Co. v. Kawneer Mfg. Co. (C.C.A.6, 1920), 262 F. 510, at 512.

In that case the court required the bond on the day the complaint was filed, accompanied by a motion for a preliminary injunction with the minute order reciting, *inter alia,* "This cause being brought on for hearing on motion for preliminary injunction, the court not having time to hear the motion on its merits, orders the defendant within two days to file a bond," with certain conditions as to future damages.

In view of the large expenditures by the plaintiff and the danger of great loss during the ensuing season, and in view of the large expenditures by the defendant, it seems to the court that a comparatively large bond should be required.

In view of what appears from the evidence at this time to be a wilful intention by defendant to seize the market on walking dolls which the plaintiff pioneered and explored, the court will leave it to the plaintiff's option whether or not plaintiff puts up a bond and gets an injunction or declines the injunction upon a deposit of a bond by the defendant.

The matter is placed on the calendar at 11:00 a. m., Monday, October 3, 1966, for hearing as to the amount of the bond.

*N.B.* At the hearing on Monday, October 3, 1966 my attention was called to F.R.Civ.P. 65(c) which in its pertinent part reads: "No restraining order or preliminary injunction shall issue except upon the giving of security by applicant, * * *."

There was some question in my mind as to whether or not the general principles of equity would permit the election of posting a bond by either plaintiff or defendant as was done in Toledo Plate Glass Window Co. v. Kawneer Mfg. Co., 262 F. 510, 512, and accordingly I announced from the bench that the option given in the last clause of the penultimate paragraph would be stricken from the Memorandum and the plaintiff would be required to give a bond which I fixed in the sum of $1,000,000, and which the plaintiff promptly posted.

The defendants just as promptly went to the Circuit Court on a motion to stay the injunction, upon which a hearing was had on October 17 before three judges of the U. S. Court of Appeals, and on Octo-

2. 10 R.C.L. 255, 256; 27 Am.Jur.(2d), 518.

ber 18 the three judges joined in the following Order:

"The motion for stay of the injunction pending appeal is denied."

Thereupon the parties promptly settled the case.

I add this footnote for whatever it may be worth to the Patent Bar and other judges.