**OBSERVA–DOME LABORATORIES, INC., Plaintiff,**

v.

**McGRAW–HILL, INC.**
**and**
**Spitz Laboratories, Inc., Defendants.**

**Civ. A. No. 72–679.**

United States District Court,
E. D. Pennsylvania.

June 15, 1972.

Laurence J. DiStefano, Jr., Philadelphia, Pa., Talivaldis Cepuritis, Arlington, Va., for plaintiff.

John C. Dorfman, Howson & Howson, and Charles H. Howson, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

On July 27, 1971, William T. Clark of Jackson, Mississippi, obtained United States Letters Patent No. 3,594,964. Claim 5 of that patent pertains to a "planetarium dome comprising a plurality of interconnected panels forming a substantially hemispherical dome and coverstrips overlying and concealing the joints between adjacent panels, said panels and coverstrips having a plurality of small apertures distributed throughout the area thereof to provide a virtually seamless appearance to the interior surface of the dome."

This patent was duly assigned to plaintiff Observa-Dome Laboratories, Inc. It is these patented coverstrips, having a plurality of small apertures and used to cover the seams between panels in a planetarium projection dome which are the subject of this suit.

In late 1971 or early 1972 the City of San Diego, California solicited bids from planetarium dome manufacturers for a new dome to be built at Balboa Park, San Diego, California.

Bids were submitted on February 28, 1972. Both plaintiff and defendant Spitz Laboratories, Inc., bid on the project. On March 30, 1972, the contract was awarded to defendant Spitz Laboratories as low bidder. On April 5, 1972, the present action was filed against Spitz and its parent, McGraw-Hill, Inc., requesting a temporary and final injunction against "continued infringement, the performance of the contract with the City of San Diego, California, by the defendant Spitz Laboratories, Inc., an accounting for damages, and assessment of interest and costs against the defendants, together with whatever relief the Court deems appropriate".

On May 15, 1972, a hearing was commenced on plaintiff's request for a preliminary injunction.

■ In order to obtain a preliminary injunction, the plaintiff has the burden of showing that the patent is valid and will be infringed by defendant but for the injunction, and also that irreparable injury will occur to the plaintiff unless the injunction is granted. Ryan v. Ideal Toy Corp., 260 F.Supp. 828 (C.D.Cal., 1966).

■ Plaintiff has failed to prove irreparable injury. More importantly, plaintiff never established that defendants intend to undertake or are likely to perform any arguably infringing conduct in the future.

Plaintiff claims that defendant Spitz must infringe plaintiff's patent to fulfill its contract with the City of San Diego. This does not appear to be necessarily so, however. Spitz has been using tape seam coverstrips printed with dots to simulate the surface appearance of planetarium dome panels since 1966. Plaintiff does not claim that such printed coverstrips would read on the patent in suit, since they are imperforate, and the patent refers specifically to strips having "a plurality of small apertures". The contract calls for the voids of the butt seams between dome panels "to be filled and rendered nonvisible by a printed perforated patterned tape overlay presenting a texture and color identical to the overall surface". See defendant's Exhibit A, Option A. The Court is not entirely sure about the exact meaning of the phrase "printed perforated patterned tape overlay", but it appears that it might apply to defendant's usual imperforate printed tape as well as to plaintiff's unprinted perforated strip. At this point, what fulfills the contract is dependent to a large degree on what San Diego will accept. We cannot say that imperforate printed tape will not be used and accepted.

Further, plaintiff claims that defendant has by its actions evidenced an intent to violate the patent in the con-

struction of the San Diego dome. Plaintiff relies mostly on a certain sample submitted by Spitz to San Diego, comprised of two panels of the type used to construct planetarium projection domes, joined by a butt seam, concealed by an aluminum tape coverstrip. The plaintiff contends that this coverstrip is an infringement of its patent and indicates an intent to infringe in the actual construction of the dome. Defendant Spitz, on the other hand, offered evidence that at the time the sample was submitted, no printed tape of the proper dot schedule was available, and the submitted strip was merely a makeshift illustration of the printed tape method.

The affidavit of plaintiff's own consultant, William K. Emcke, seems to support Spitz's version. He describes the coverstrip on the sample as an aluminum tape approximately two inches wide perforated in the same pattern as the adjacent dome panels backed by a black non-metallic adhesive background tape, which had been attached to the back of the perforated aluminum tape, showing through the perforations as a pattern of black dots. Thus it appears that the coverstrip used in the sample was, taken as one unit, imperforate, even though it had a perforated component. Its construction appears to have given it none of the advantages of aperture wall depth or light passage attributed to plaintiff's patented strips by plaintiff's expert, O. R. Norton, at pp. 146–148 of his testimony.

Although it is perhaps possible that this sample coverstrip does read on the patent, it cannot on the present state of the record be said to evidence an intent on the part of Spitz to violate the patent in the future, especially in the face of the large amount of evidence produced by Spitz tending to indicate the contrary. Although Spitz refused to promise not to use a perforated metal coverstrip at San Diego, to avoid an appearance of acquiescence in an as yet unlitigated patent, the use of their normal tape coverstrips seems more likely.

■ There is one way in which the sample Spitz gave to San Diego is very important to plaintiff's action. It prevents it from being dismissed entirely for lack of a case or controversy required by Art. III of the Constitution. In order to create a case and controversy in a patent case, there must appear to be either an act of infringement or facts and circumstances which make it reasonably clear that such an infringement has been or is going to be undertaken. Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68 (3rd Cir., 1943) cert. den. 320 U.S 761, 64 S.Ct. 70, 88 L.Ed. 454; Welch v. Grindle, 251 F.2d 671 (9th Cir., 1951); Wembly, Inc. v. Superba Cravats, Inc., 315 F.2d 87 (2nd Cir., 1963).

■ It is clear that the District Court may of its own initiative inquire into and determine whether jurisdictional facts exist, and is not bound by the allegations of the complaint in so doing. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) and cases therein cited at footnote 4. Thus, this Court is perfectly justified in disregarding the terms of paragraph 6 of the complaint that "defendant Spitz Laboratories, Inc. has for a long time in the past been and still is infringing on those Letters Patent by making, selling and using planetarium projection domes embodying the potential invention and will continue to do so unless enjoined by this Court" in the face of Observa-Dome's admission on page 7 of "Plaintiff's Memorandum in Support of Preliminary Injunction" filed with this Court on May 7, 1972 that "Prior to the present litigation, the other manufacturers of planetarium domes in the United States known to the plaintiff, Astro-Tec Manufacturing, Inc. of Canal Fulton, Ohio, and Spitz Laboratories of Chadds Ford, Pa., had not built planetarium domes embodying the patented invention".

■ Without the sample, it would be clear that no act of infringement had

yet occurred, and further that the occurrence of acts of infringement in the future were purely speculative. When a person has not engaged in infringing conduct and his intention and ability to do so is not established, the holder of the patent has no litigable dispute with him, and both parties lack "an interest in a controversy to support an action for declaratory judgment relief to test the validity of a patent". Aralac, Inc. v. Hat Corp. of America, 166 F.2d 286, at 295 (3rd Cir., 1948), and cases therein cited; *Wembly, Inc.*, supra.

■ The existence of the sample is all that prevents this Court from dismissing this case. While it does not appear, on what is presently known, that the sample read on the patent, or that it was an infringing sale or use of the patented article, even so, these things are conceivable, and have not been fully litigated. Further, these questions comprise the merits of one legal claim arguably made in paragraph 7 of the complaint.

■ When jurisdictional facts are thus intertwined with the merits, they must be left to a trial on the merits. Land v. Dollar, supra; Marks Food Corp. v. Barbara Ann Baking Co., 274 F.2d 934 (9th Cir., 1960); McBeath v. Inter-American Citizens For Decency, 374 F.2d 359 (5th Cir., 1967). This claim will be heard in the normal course of this Court's calendar.

It is somewhat ironic that the claim least pressed by plaintiff is the claim that keeps it before the Court. If there were still a distinction between Law and Equity in Federal Practice, plaintiff's equitable claims would be dismissed. The creation of a unitary form of action eliminates that procedural step, but does not give this Court any greater power to grant the equitable relief sought than it had before. And even if this Court were technically sure of its equity jurisdiction in this case, it would decline to exercise it and refuse to issue the preliminary injunction sought. The issues of this case are not ripe and may indeed never ripen into traditionally justiciable issues. What the future will bring is, in this case more than most, simply too speculative to justify action by the Court. Plaintiff's Motion for Preliminary Injunction is denied.